**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
:
**In re**                                 :        **Chapter 11 Case No.**
:
**IMPATH INC., et al.,**             :        **03-16113 (PCB)**
:
       **Debtors.**                 :        **(Jointly Administered)**
:
:
-------------------------------------------------------------------x

## DEBTORS' FIRST AMENDED JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**WEIL, GOTSHAL & MANGES LLP**
**767 Fifth Avenue**
**New York, New York 10153**
**(212) 310-8000**
**Attorneys for Debtors**
**and Debtors in Possession**

**Dated:** ~~October 18, 2004~~January 14, 2005
       **New York, New York**

**WEIL, GOTSHAL & MANGES LLP**
**Attorneys for Debtors and**
**Debtors in Possession**
**767 Fifth Avenue**
**New York, New York 10153**
**Telephone: (212) 310-8000**
**Facsimile: (212) 310-8007**
**George A. Davis, Esq. (GD 2761)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
| | : | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **IMPATH INC., et al.,** | : | **03-16113 (PCB)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |
| | : | |

-------------------------------------------------------------x

## DEBTORS' FIRST AMENDED JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

IMPATH Inc., IMPATH Physician Services, Inc., IMPATH Predictive Oncology, Inc., IMPATH Information Services, Inc., IMPATH-T, Inc. (f/k/a Tamtron Corporation), and IMPATH-M, Inc. (f/k/a Medical Registry Services, Inc.) (collectively, "Impath" or the "Debtors") propose the following joint chapter 11 plan of liquidation (the "Plan") pursuant to section 1121(a) of the Bankruptcy Code. The Debtors are proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

The Plan provides for the liquidation and conversion of all of the Debtors' respective assets to cash and the distribution of the proceeds thereof, net of fees and expenses, to holders of Claims and Equity Interests in accordance with their relative priority. Generally, secured and unsecured creditors will be paid in full with interest ~~and holders of Equity Interests will receive the~~. The residual value of the Debtors' estates ~~after making appropriate provision for distributions in respect of~~, estimated at $79,000,000[1] (excluding contingent and/or unliquidated assets), will then be divided between holders of Allowed Securities Litigation Claims ~~to the extent such Claims are Allowed by the Bankruptcy Court in an amount in excess of available insurance coverage actually paid in satisfaction of Allowed Securities Litigation Claims.~~ and Equity Interests

---

[1] The estimate of Available Cash is based upon a number of significant assumptions. The actual amount of Available Cash may be higher or lower than such estimate.

in accordance with the terms of the Class Action Settlement, annexed hereto as Exhibit A.

The Plan is a joint plan of liquidation and provides that the Debtors' Chapter 11 Cases will be substantively consolidated. Accordingly, and except as expressly provided for herein, all provisions of the Plan, including without limitation, the definitions and distributions to creditors, shall apply to the assets and claims of the consolidated bankruptcy estates of the Debtors. All holders of Claims against, and Equity Interests in, the Debtors are encouraged to read the Plan and Disclosure Statement in their entirety before voting to accept or reject the Plan.

## ARTICLE I.

## <u>DEFINITIONS AND INTERPRETATION</u>

<u>Definitions.</u> As used in the Plan, the following terms shall have the respective meanings specified below:

**1.1** <u>Administrative Expense Claim</u> means any right to payment constituting a cost or expense of administration of any of the Chapter 11 Cases allowed under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtors' estates, (b) any actual and necessary costs and expenses of operating the Debtors' businesses, (c) any indebtedness or obligations incurred or assumed by the Debtors, as Debtors in Possession, during the Chapter 11 Cases, (d) any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under sections 330 or 503 of the Bankruptcy Code and (e) any fees or charges assessed against the estates of the Debtors under section 1930 of chapter 123 of title 28 of the United States Code.

**1.2** <u>Allowed</u> means, (i) with reference to any Claim, (a) any Claim against the Debtors which has been listed by the Debtors in their Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (b) any Claim allowed pursuant to the Plan, (c) any Claim which is not Disputed, (d) any Claim that is compromised, settled or otherwise resolved pursuant to the authority granted to the Debtors pursuant to a Final Order of the Bankruptcy Court or under Section 7.2 of the Plan or (e) any Claim which, if Disputed, has been Allowed by Final Order; <u>provided</u>, <u>however</u>, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder, and (ii) with reference to any Equity Interest, any Equity Interest registered in the stock register maintained by or on behalf of the Debtors as of the applicable Record Date. Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Claim from and after the Commencement Date.

**1.3**    Available Cash means, as of any given date, all Cash of the Debtors or the Liquidating Trust realized from the sale or other disposition or realization of their assets, all interest of the Debtors or the Liquidating Trust earned on invested funds or from any other source, and all recoveries on contingent and unrealized assets (subject to the terms of the Class Action Settlement), such as, without limitation, claims against third parties for damages arising in respect of the subject matter underlying the Securities Litigation Claims, less (i) Cash of the Debtors' estates or the Liquidating Trust to be distributed to the holders of Allowed Claims and to ~~the~~ holders of Disputed Claims (other than ~~Allowed~~Opt-Out Securities Litigation Claims) to the extent they become Allowed Claims ~~and~~, (ii) the Estimated Liquidation Expenses, (iii) the Class 6 Allocation, and (iv) the amount of Cash to be contributed by the Debtors or the Trustee to the Indemnity Reserve; provided, however, that Available Cash shall not include collateral security or any proceeds of collateral to the extent securing any Allowed Secured Claims.

**1.4**    Available Cash Distribution Dates mean the Effective Date and the subsequent dates upon which distributions of Available Cash are made to ~~or on account of (a) the holders of Allowed Equity Interests and (b) if Allowed, the Securities Litigation Claims, following the entry of a Final Order of the Bankruptcy Court (i) determining the amount of the Allowed Securities Litigation Claims or (ii) establishing the amount of the Available Cash Holdback.~~

~~**1.5**    Available Cash Holdback means the amount of Available Cash determined by the Bankruptcy Court to be retained in respect of Disputed Securities Litigation Claims in order to facilitate distributions to holders of Allowed Equity Interests while the Disputed Securities Litigation Claims are being litigated or otherwise resolved. The amount so retained shall be held as part of the general funds of the Debtors' estates and shall not be held in a separate account~~holders of beneficial interests in the Liquidating Trust.

**1.5**    ~~1.6~~ Ballots mean each of the ballot forms distributed by the Debtors to each member of an impaired Class entitled to vote under Article III hereof in connection with the solicitation of acceptances or rejections of the Plan.

**1.6**    ~~1.7~~ Bankruptcy Code means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases, as in effect on the Confirmation Date.

**1.7**    ~~1.8~~ Bankruptcy Court means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Cases or any other court with jurisdiction over the Chapter 11 Cases.

**1.8**    ~~1.9~~ Bankruptcy Rules mean, collectively, the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any Local Rules of the Bankruptcy Court, as now in effect or hereafter amended.

**1.9** ~~1.10~~ Bar Dates mean the dates designated by the Bankruptcy Court as the last dates for filing proofs of Claim (~~including Administrative Claims~~ other than Professional Fee Claims) against the Debtors.

**1.10** ~~1.11~~ Business Day means any day other than a Saturday, Sunday or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order, and the Friday after Thanksgiving Day.

**1.11** ~~1.12~~ Case Interest Rate means, except to the extent a holder of an Allowed Claim has previously agreed or agrees to a different treatment, simple interest at the rate of 6 5/8% per annum from the Commencement Date through the respective dates on which Allowed Claims are paid; provided that Allowed General Unsecured Claims paid by the Debtors prior to confirmation of the Plan, the holders of which did not negotiate their payment checks within ninety (90) days of the issuance of such checks, shall only be entitled to interest through the date on which their checks were originally issued.

**1.12** ~~1.13~~ Cash means legal tender of the United States of America.

**1.13** ~~1.14~~ Chapter 11 Cases mean the Debtors' jointly administered chapter 11 cases pending in the Bankruptcy Court.

**1.14** ~~1.15~~ Claim has the meaning set forth in section 101(5) of the Bankruptcy Code, against any Debtor.

**1.15** ~~1.16~~ Class means a category of holders of Claims or Equity Interests as set forth in Article III of the Plan, classified by the Plan pursuant to section 1123(a)(1) of the Bankruptcy Code.

**1.16** Class 6 Allocation means the sum of: (i) $8,000,000, (ii) 15,000,000 of proceeds of the Debtors' directors and officers insurance policies with the D&O Insurers in connection with the Securities Litigation Claims, subject to funds allocable to the Indemnity Reserve pursuant to the Settlement Agreement, and (iii) 22% of any net proceeds recovered by the Trustee on account of contingent and/or unliquidated claims held by the Debtors and/or the holders of Securities Litigation Claims arising from or relating to the accounting irregularities that are the subject of the Securities Class Action Lawsuit that are not released pursuant to the Plan or the Class Action Settlement, less the amount of $400,000 for the Indemnity Reserve.

**1.17** ~~Class 5 Allocation~~ Class A Beneficial Interest means ~~the proportion of Available Cash derived by dividing Total Equity Value by the sum of Total Equity Value plus Net Allowed Securities Litigation Claims.~~ a beneficial interest in the Liquidating Trust which entitles its holder to receive distributions from the Liquidating Trust of Available Cash in the proportion that the Class A Beneficial Interest bears to all then outstanding Class A Beneficial Interests.

**1.18** ~~Class 6 Allocation~~Class B Beneficial Interest means ~~the proportion of Available Cash derived by dividing Net Allowed Securities Litigation Claims by the sum of Net Allowed Securities Litigation Claims plus Total Equity Value.~~ a beneficial interest in the Liquidating Trust which entitles its holder to receive any unpaid portion of the Class 6 Allocation from the Liquidating Trust after the Effective Date.

**1.19** Class Action Settlement means the settlement and release of the Securities Class Action Lawsuit, the terms and conditions for which are set forth in the Settlement Agreement.

**1.20** ~~1.19~~ Collateral means any property or interest in property of any Debtor subject to a lien, charge, or other encumbrance to secure the payment or performance of a Claim, which lien, charge or encumbrance is valid, perfected and enforceable under applicable law, and is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

**1.21** ~~1.20~~ Commencement Date means September 28, 2003, the date on which the Debtors commenced their Chapter 11 Cases.

**1.22** ~~1.21~~ Common Stock means the common stock of IMPATH Inc. authorized as of the Commencement Date.

**1.23** ~~1.22~~ Confirmation Date means the date of entry of the Confirmation Order by the clerk of the Bankruptcy Court.

**1.24** ~~1.23~~ Confirmation Hearing means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

**1.25** ~~1.24~~ Confirmation Order means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.26** ~~1.25~~ Credit Agreement means that certain credit agreement dated as of June 4, 2001 by and among the Debtors, Fleet National Bank, for itself, as Agent and Lender, and the other Lenders, as amended.

**1.27** ~~1.26~~ Creditors Committee means the official committee of unsecured creditors appointed in the Chapter 11 Cases~~,~~ on October 6, 2003, pursuant to section 1102 of the Bankruptcy Code.

**1.28** Culpable Individual means any present or former director, officer, or employee of the Debtors who is or has been convicted of a crime, or found in fact in any judicial proceeding to have committed knowing and intentional fraud, with respect to matters alleged as a basis for liability in the Securities Class Action Lawsuit.

**1.29** D&O Insurers mean National Union Fire Insurance of Pittsburgh, PA ("National Union"), ACE America Insurance Company ("ACE"), or Travelers Casualty

& Surety Company ("Travelers"), the issuers of the Debtors' directors and officers insurance policies and party to the Class Action Settlement.

**1.30** ~~1.27~~ Debtors mean, collectively, IMPATH Inc., IMPATH Physician Services, Inc., IMPATH Predictive Oncology, Inc., IMPATH Information Services, Inc., IMPATH-T, Inc. (f/k/a Tamtron Corporation), and IMPATH-M, Inc. (f/k/a Medical Registry Services, Inc.).

**1.31** ~~1.28~~ Debtors in Possession mean the Debtors in their capacity as Debtors in Possession in the Chapter 11 Cases pursuant to sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

**1.32** ~~1.29~~ Deficiency Claim means the portion, if any, of a Secured Claim that is unsecured.

**1.33** ~~1.30~~ DIP Lenders mean the lenders from time to time under that certain Revolving Credit and Guarantee Agreement, dated as of September 30, 2003, by and among the Debtors, Fleet National Bank, for itself, as Agent and DIP Lender, and the other DIP Lenders, as amended.

**1.34** ~~1.31~~ Disbursing Agent means, on or prior to the Effective Date, the Debtors ~~and/~~or any designee of the Debtors, including the Trustee, and, after the Effective Date, the Trustee or any of his designees all in their sole discretion, to serve as disbursing agent under the Plan in respect of Allowed Claims and Equity Interests and beneficial interests in the Liquidating Trust.

**1.35** ~~1.32~~ Disclosure Statement means the written disclosure statement (including all exhibits and schedules thereto) that relates to the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**1.36** ~~1.33~~ Disputed Claim means, any Claim not otherwise Allowed or paid pursuant to the Plan or an order of the Bankruptcy Court (i) which has been or hereafter is listed on the Schedules as unliquidated, contingent, or disputed, and which has not been resolved by written agreement of the parties or an order of the Bankruptcy Court, (ii) which is disputed under the Plan, (iii) as to which any Debtor or the ~~Debtors have~~ Trustee has interposed a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order, and (iv) any Claim proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly filed.

~~1.34    Distribution Date~~

**1.37** District Court means the ~~date, occurring as soon as practicable after the Effective Date, upon which distributions are made by the Disbursing Agent to holders of~~

~~Allowed Claims, other than Securities Litigation Claims.~~<u>United States District Court for the Southern District of New York.</u>

**<u>1.38</u>** ~~1.35~~ <u>Effective Date</u> means the first Business Day on which the conditions specified in Section 10.1 of the Plan have been satisfied or waived.

**<u>1.39</u>** ~~1.36~~ <u>Equity Committee</u> means the official committee of equity security holders of IMPATH Inc.<u>,</u> pursuant to section 1102 of the Bankruptcy Code.

**<u>1.40</u>** ~~1.37~~ <u>Equity Interest</u> means the interest of any holder of equity securities of the Debtors represented by the issued and outstanding shares of common stock of IMPATH Inc. whether or not transferable, including any existing options, warrants or rights, contractual or otherwise, to acquire such equity interest.

**<u>1.41</u>** ~~1.38 Equity Representative~~<u>Escrow Agent</u> means the person ~~appointed~~<u>designated by the District Court to make distributions to holders of Securities Litigation Claims</u> in accordance with ~~Section 12.2 of the Plan as the representative of the interests of holders of Allowed Equity Interests in connection with matters described therein~~<u>the Class Action Settlement</u>.

**<u>1.42</u>** ~~1.39~~ <u>Estimated Liquidation Expenses</u> mean the amount of Cash estimated by the Debtors <u>or the Trustee, as the case may be,</u> from time to time, to be necessary to adequately fund the Plan<u>, to pursue and recover contingent assets,</u> and complete the administration of the Chapter 11 Cases on and after the Effective Date.

**<u>1.43</u>** ~~1.40~~ <u>Face Amount</u> means (i) when used in reference to a Disputed Claim, the full stated amount claimed by the holder of such Claim in any proof of Claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, (ii) when used in reference to an unliquidated Claim, the amount of the Claim as estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code, and (iii) when used in reference to an Allowed Claim, the allowed amount of such Claim.

**<u>1.44</u>** ~~1.41~~ <u>Final Distribution Date</u> means ~~the date on which a final distribution of Available Cash is made pursuant to Section 5.4(a) of the Plan. The Final Distribution Date shall be~~ a date, as determined by the ~~Debtors~~<u>Trustee</u>, (i) which is after the liquidation into Cash of all ~~assets of the Debtors~~<u>Liquidating Trust Assets</u> (other than those assets abandoned by ~~Debtors~~<u>the Trustee</u>) and collection of other sums due or otherwise remitted or returned to the ~~Debtors~~<u>Trustee</u>, including from prosecution of claims against third parties~~,~~ and (ii) on or after final resolution of all Disputed Claims.

**<u>1.45</u>** ~~1.42~~ <u>Final Order</u> means an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or motion for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, or move to reargue or rehear shall have been waived in writing in form and substance satisfactory to

the Debtors or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been upheld by the highest court to which such order was appealed, or from which certiorari, reargument or rehearing was sought and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired, provided, however, the possibility that a timely motion under Rules 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not prevent such order from being a Final Order.

**1.46** ~~1.43~~ General Unsecured Claim means any unsecured, non-priority Claim against the Debtors that is not an Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, or Securities Litigation Claim.

**1.47** ~~1.44~~ Impaired means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.48** Indemnity Reserve means the reserve established and maintained by the Liquidating Trust into which the Disbursing Agent will deposit $1,300,000 on the Effective Date for payment of indemnification and reimbursement obligations pursuant to Section 8.5 hereof.

**1.49** Lead Plaintiffs mean Southwest Carpenters Pension Trust, f/k/a Carpenters Pension Trust for Southern California and United Brotherhood of Carpenters Pensions Fund, lead plaintiffs in the Securities Class Action Lawsuit.

**1.50** ~~1.45~~ Lender Claim means a Claim of any Lender (i) arising under or in connection with the Credit Agreement and all documents relating thereto, or (ii) arising under or in connection with any guaranty of the obligations under the Credit Agreement.

**1.51** ~~1.46~~ Lenders mean the lenders from time to time party to the Credit Agreement.

~~1.47 Net Allowed Securities Litigation Claims~~

**1.52** Liquidating Trust ~~mean the aggregate amount of Allowed Securities Litigation Claims, if any, less available insurance coverage actually paid in satisfaction of Allowed Securities Litigation Claims.~~ means the liquidating trust described in Section 6.5 hereof.

**1.53** Liquidating Trust Agreement means the agreement governing the Liquidating Trust, the form of which will be filed with the Bankruptcy Court prior to the Confirmation Date.

**1.54** Liquidating Trust Assets mean all of the assets of the Debtors as of the Effective Date, other than any assets distributed by the Debtors to holders of Allowed

Claims (including Allowed ~~Securities Litigation Claims~~) or Equity Interests on the Effective Date in accordance with the Plan.  The Liquidating Trust Assets shall include, without limitation, all cash and bank accounts, and all contingent and/or unliquidated claims arising from or relating to the accounting irregularities that are the subject of the Securities Class Action Lawsuit that are not released pursuant to this Plan or the Class Action Settlement.

**1.55**    Liquidating Trust Claims Reserve means any Liquidating Trust Assets allocable to, or retained on account of, Opt-Out Securities Litigation Claims as held by a discrete trust for federal income tax purposes consisting of separate and independent shares to be established in respect of each Opt-Out Securities Litigation Claim, in accordance with the trust provisions of the Tax Code (section 641 *et seq.*).

**1.56**    Opt-Out Securities Litigation Claims means any and all Securities Litigation Claims, the holders of which have timely filed a proof of claim in these Chapter 11 Cases relating thereto and timely elected to opt out of the Class Action Settlement.

**1.57**    ~~1.48~~ Other Secured Claim means any Secured Claim, other than Lender Claims and the Claims of the DIP Lenders.

**1.58**    ~~1.49~~ Plan means this joint chapter 11 plan of liquidation for each of the Debtors, including all exhibits, supplements, and schedules annexed hereto, either in its present form or as it may be altered, supplemented, amended or modified from time to time.

**1.59**    ~~1.50~~ Priority Non-Tax Claim means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in sections 507(a)(2)-(7) and (9) of the Bankruptcy Code.

**1.60**    ~~1.51~~ Priority Tax Claim means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.61**    ~~1.52~~ Professional means (i) any professional employed in the Chapter 11 Cases pursuant to section 327 or 1103 of the Bankruptcy Code and (ii) any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

**1.62**    ~~1.53~~ Pro Rata Share means, at any time, (i) with respect to distributions from the Debtors' estates or the Liquidating Trust, the proportion that the Face Amount of a Claim in a particular Class, other than a Securities Litigation Claim, bears to the aggregate Face Amount of all Claims, including Disputed Claims, in such Class ~~or~~and (ii) with respect to distributions of Available Cash on the Effective Date and Class A Beneficial Interests, ~~(a)~~ the proportion that an Equity Interest or Allowed Opt-Out Securities Claim bears to the aggregate amount of all Equity Interests ~~in such Class~~

~~multiplied by the Class 5 Allocation or (b) the proportion that the Face Amount of a Securities Litigation Claim bears to the aggregate Face Amount of all~~and Allowed Opt-Out Securities Litigation Claims ~~in such Class multiplied~~, as determined by the ~~Class 6 Allocation~~Bankruptcy Court.

**1.63** ~~1.54~~ Record Date means (i) with respect to Claims, ~~including Securities Litigation Claims,~~ the close of business on the fifth Business Day prior to the Confirmation Date ~~and~~, with respect to Securities Litigation Claims, such other date as may be established by the District Court, or (ii) with respect to Equity Interests, the close of business on the fifth Business Day prior to ~~each~~the first Available Cash Distribution Date.

**1.64** ~~1.55~~ Schedules mean the schedules of assets and liabilities and the statements of financial affairs filed by each of the Debtors on December 15, 2003 as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, including any supplements or amendments thereto through the Confirmation Date.

**1.65** ~~1.56~~ Secured Claim means a Claim (i) secured by Collateral, the amount of which is equal to or less than the value of such Collateral (a) as set forth in the Plan, (b) as agreed to by the holder of such Claim and the Debtors after reasonable notice to the Creditors Committee and the Equity Committee, or (c) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code or (ii) the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code; provided, that to the extent that the Collateral or right of setoff is less than the value of the related Claim, such deficiency shall be a General Unsecured Claim.

**1.66** Securities Class Action Lawsuit means the consolidated federal securities class action lawsuit pending against Impath Inc. and certain of its former officers in the District Court entitled In re Impath Inc. Securities Litigation, Master File No. 03-CIV-5667 (DAB) (SDNY).

**1.67** ~~1.57~~ Securities Litigation Claim means any Claim against any of the Debtors, whether or not subject to an existing lawsuit, for damages or rescission arising from the purchase or sale of a security of the Debtors~~, or for reimbursement, indemnification or contribution on account of such Claims allowed under section 502 of the Bankruptcy Code on account of such a Claim~~, that is subordinated to other Claims in accordance with section 510(b) of the Bankruptcy Code.

**1.68** Settlement Agreement means the agreement, dated January 14, 2005, by and among IMPATH Inc., the Lead Plaintiffs, the D&O Insurers, and certain former officers of the Debtors, providing for the settlement, release and dismissal of the Securities Class Action Lawsuit, a copy of which is annexed as Exhibit A hereto.

**1.69** ~~1.58~~ Subsequent Distribution Date means, following the Effective Date, a date which shall occur at the end of each subsequent three-month period, or more or less frequently as may be determined by the Disbursing Agent, on which a distribution of

Cash (or, as provided in Section 6.5(a) hereof, beneficial interests in the Liquidating Trust) is made to the holders of Allowed Claims or Allowed Equity Interests, in accordance with Article V of the Plan.

**1.70** ~~1.59~~ Tort Claims mean any Claim that has not been compromised and settled or otherwise resolved (a) relating to personal injury, property damage, products liability, wrongful death, or other similar Claims asserted against the Debtors or (b) arising under any federal, state or local statute, rule, regulation or ordinance governing, regulating or relating to health, safety, hazardous substances, or the environment, including, in each case, unasserted and other intangible Claims.

~~1.60 Total Equity Value~~

**1.71** Trustee ~~means Available Cash plus, as of the Confirmation Date, as determined by the Bankruptcy Court on or after such date, the aggregate value of all other assets of the Debtors, including contingent and unrealized assets, such as, without limitation, claims against third parties for damages arising in respect of the subject matter underlying the Securities Litigation Claims, subject to adjustment from time to time based on actual recoveries from contingent and unrealized claims and such other adjustments as may be allowed by the Bankruptcy Court.~~ shall have the meaning ascribed to such term in Section 6.5 hereof.

Construction of Certain Terms.

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter. Any term used in the Plan that is not defined shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

**ARTICLE II.**

**TREATMENT AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS**

**2.1**    Administrative Expense Claims. Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, each holder of an Allowed Administrative Expense Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Administrative Expense Claim, Cash in an amount equal to such Allowed Claim, on the later of the ~~Distribution~~Effective Date and the date that is ten (10) Business Days after such Administrative Expense Claim becomes an Allowed Administrative Expense Claim pursuant to a Final Order of the Bankruptcy Court, or as soon after such dates as is practicable; provided, however, that Allowed Administrative Expense Claims representing obligations incurred in the ordinary course

of business of the Debtors shall be paid by the ~~Debtors~~Disbursing Agent in the ordinary course ~~of business~~, consistent with past practice _of the Debtors_ and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions.

**2.2** <u>Professional Compensation and Reimbursement Claims</u>. All Professionals seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement for expenses incurred through and including the Effective Date under sections 503(b) of the Bankruptcy Code shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the date that is 60 days after the Effective Date or such other date as may be fixed by the Bankruptcy Court. If granted such an award by the Bankruptcy Court, such Professional shall be paid in full in such amounts as are Allowed by the Bankruptcy Court (i) on the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable, or (ii) upon such other terms as may be mutually agreed upon by such holder of an Administrative Expense Claim and the Debtors _or the Trustee_.

**2.3** <u>Priority Tax Claims</u>. Except to the extent that any governmental unit entitled to payment of any Allowed Priority Tax Claim has previously agreed or agrees to a different treatment by stipulation or otherwise, pursuant to section 1129(a)(9) of the Bankruptcy Code, each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement and release of and in exchange for such Allowed Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax Claim, together with interest at the Case Interest Rate, on the later of the ~~Distribution~~Effective Date, and to the extent such Priority Tax Claim is not an Allowed Claim on the ~~Distribution~~Effective Date, on the first Subsequent Distribution Date following allowance of such Claim.

**ARTICLE III.**

<u>**CLASSIFICATION AND VOTING OF CLAIMS AND EQUITY INTERESTS**</u>

Claims and Equity Interests, other than Administrative Expense Claims and Priority Tax Claims, are classified for all purposes, including voting (unless otherwise specified), confirmation and distribution pursuant to the Plan as set forth below.

A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes. A Claim or Equity Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim in that Class and such Claim or Equity Interest has not been paid, released or otherwise satisfied prior to the Effective Date.

| CLASS | STATUS |
|-------|--------|
| Class 1 – Priority Non-Tax Claims | Impaired/Entitled to Vote |
| Class 2 – Other Secured Claims | Impaired/Entitled to Vote |
| Class 3 – Lender Claims | Unimpaired |
| Class 4 – General Unsecured Claims | Impaired/Entitled to Vote |
| Class 5 – Equity Interests | Impaired/Entitled to Vote |
| Class 6 – Securities Litigation Claims | Impaired/Entitled to Vote |

**ARTICLE IV.**

**TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**4.1**     Class 1 – Priority Non-Tax Claims.

**(a)**     Impairment and Voting. Class 1 is impaired by the Plan. Each holder of an Allowed Priority Non-Tax Claim is entitled to vote to accept or reject the Plan.

**(b)**     Treatment. Except to the extent that a holder of an Allowed Priority Non-Tax Claim has been paid by the Debtors prior to the ~~Distribution~~Effective Date or has previously agreed or agrees to a different treatment by stipulation or otherwise, each holder of an Allowed Priority Non-Tax Claim shall receive, in full and complete satisfaction, settlement, and release of and in exchange for such holder's Allowed Priority Non-Tax Claim, Cash in an amount equal to such Allowed Priority Non-Tax Claim, together with interest at the Case Interest Rate, on the later of the ~~Distribution~~Effective Date and, to the extent such Priority Non-Tax Claim is not an Allowed Claim on the ~~Distribution~~Effective Date, on the first Subsequent Distribution Date following allowance of such Claim.

**4.2**     Class 2 – Other Secured Claims.

**(a)**     Impairment and Voting. Class 2 is impaired by the Plan. Each holder of an Allowed Other Secured Claim is entitled to vote to accept or reject the Plan.

**(b)**     Treatment. On the ~~Distribution~~Effective Date, unless a holder of an Allowed Other Secured Claim has been paid by the Debtors prior to the ~~Distribution~~Effective Date or has previously agreed or agrees to a different treatment by stipulation or otherwise, each holder of an Allowed Secured Claim shall receive (i) the amount of the proceeds actually realized from the sale of any Collateral securing such

Claim, less the actual costs and expenses of disposing of such Collateral; and/or (ii) the Collateral securing such Claim, but in neither case in an amount greater than necessary to pay such Allowed Secured Claim in full, plus (i1) if the Collateral securing such Allowed Secured Claim exceeds the Allowed amount of such Claim, any interest (including post-petition interest at the non-default rate) on such Allowed Secured Claim and any reasonable fees, costs or charges provided for under the governing agreements, to the extent allowed pursuant to section 506(b) of the Bankruptcy Code or (ii2) if the amount of such Allowed Secured Claim exceeds the value of the Collateral securing such Claim, interest at the Case Interest Rate. To the extent that the amount of an Allowed Secured Claim exceeds the value of the Collateral securing such Claim that portion of such Claim shall be treated as an unsecured deficiency Claim in Class 4.

(c) Sale of Collateral After Effective Date. The ~~Disbursing Agent~~Trustee shall have the right, at any time subsequent to the Effective Date (i) to satisfy in full the obligations owed in respect of an Allowed Secured Claim by conveying to the holder of such Claim all of the right, title and interest in and to the property that is subject to the lien securing such Claim and/or (ii) to sell any property subject to a lien securing such Claim on the terms and subject to the conditions specified in the orders of the Bankruptcy Court and section 363 and the other applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

(d) Retention of Lien. Except as otherwise provided by an order of the Bankruptcy Court and section 363(f) of the Bankruptcy Code, the holder of an Allowed Secured Claim shall retain the lien securing the Claim as of the Confirmation Date until the distributions provided for in Section 4.2(b) have been made to such holder.

(e) Subclasses. Each Secured Claim shall be deemed to be separately classified in a subclass of Class 2 and shall have all rights associated with separate classification under the Bankruptcy Code.

**4.3** Class 3 – Lender Claims.

(a) Impairment and Voting. Class 3 is unimpaired by the Plan. Each holder of an Allowed Lender Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b) Treatment. On the ~~Distribution~~Effective Date, except to the extent that a holder of an Allowed Lender Claim has been paid by the Debtors prior to the Effective Date, each holder of an Allowed Lender Claim shall receive, in full and complete satisfaction, settlement, and release of and in exchange for such holder's Allowed Lender Claim, its proportionate share as provided in the Credit Agreement of Cash in an amount equal to such Lender Claim, together with accrued and unpaid interest, calculated at the non-default rate and any reasonable fees, costs, or charges provided for under the Credit Agreement to the extent allowed pursuant to section 506(b) of the Bankruptcy Code.

**4.4**   Class 4 - General Unsecured Claims.

(a)   <u>Impairment and Voting</u>. Class 4 is impaired by the Plan. Each holder of an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

(b)   <u>Treatment</u>. Except to the extent that a holder of an Allowed General Unsecured Claim has been paid by the Debtors prior to the Effective Date or has previously agreed or agrees to a different treatment by stipulation or otherwise, each holder of an Allowed General Unsecured Claim shall receive, in full and complete satisfaction, settlement, and release of and in exchange for such holder's Allowed General Unsecured Claim, Cash in an amount equal to such Allowed General Unsecured Claim, together with interest <u>from the Commencement Date through the respective dates on which the Allowed Claims are paid,</u> at the Case Interest Rate, on the later of the <s>Distribution</s><u>Effective</u> Date and, to the extent such General Unsecured Claim is not an Allowed Claim on the <s>Distribution</s><u>Effective</u> Date, on the first Subsequent Distribution Date following allowance of such Claim; <u>provided</u>, <u>however</u>, that interest on lease <u>or executory contract</u> rejection <u>damage</u> Claims shall commence accruing on the date following the effective date of <s>such lease</s> rejection.

**4.5**   Class 5 – Equity Interests.

(a)   <u>Impairment and Voting</u>. Class 5 is impaired by the Plan. Each holder of an Allowed Equity Interest is entitled to vote to accept or reject the Plan.

(b)   <u>Treatment</u>. <s>Holders of Allowed Equity Interests will retain their Equity Interests until the occurrence of the Final Distribution Date, at which time such</s><u>On the Effective Date, all</u> Equity Interests shall be <s>extinguished</s><u>canceled and on such date, or as reasonably practical thereafter, the Trustee shall distribute to the holders of Equity Interests their Pro Rata Share of (i) Available Cash, if any, and (ii) Class A Beneficial Interests in the Liquidating Trust</u>; <u>provided</u>, <u>however</u>, that any options, warrants, or rights, contractual or otherwise, to acquire an Equity Interest in the Debtors which are not exercised by the Record Date <s>for the first Available Cash Distribution Date</s> shall be cancelled effective as of that Record Date. <s>On</s><u>After the Effective Date, on</u> each <u>subsequent</u> Available Cash Distribution Date, <s>each holder of an Allowed Equity Interest, as of the applicable Record Date, shall receive, directly or indirectly, its Pro Rata Share of Available Cash.  On the Final Distribution Date, the final distribution, together with all prior distributions, shall be deemed to have been made in full and complete satisfaction, settlement, and release of and in exchange for such Allowed Equity Interest</s><u>the Trustee will effectuate distributions to the holders of Equity Interests</u>.

**4.6**   Class 6 –Securities Litigation Claims.

(a)   <u>Impairment and Voting</u>. Class 6 is impaired by the Plan. <s>Each holder of an Allowed Securities Litigation Claim is entitled to vote to accept or reject the Plan.</s><u>Solely for voting and distribution purposes under the Plan, the class proof of claim</u>

filed by the Lead Plaintiffs shall be allowed in the amount of the Class 6 Allocation. The Lead Plaintiffs shall be entitled to vote such class proof of claim to accept or reject the Plan on behalf of all holders of Securities Litigation Claims, other than those holders of Securities Litigation Claims who timely file a motion to temporarily allow their claims for voting purposes pursuant to Bankruptcy Rule 3018(a) which is approved by the Bankruptcy Court.

**(b)** Treatment. ~~On the Available Cash Distribution Dates, distributions of Available Cash shall be made to holders of Allowed~~ Securities Litigation Claims ~~following final allowance of such Claims by the Bankruptcy Court. The Debtors, in their discretion, after consultation with the Equity Committee or the Equity Representative, may (i) settle the~~ shall be subordinated in payment to all other General Unsecured Claims under section 510(b) of the Bankruptcy Code. On the Effective Date, or as soon as reasonably practicable thereafter, the Disbursing Agent will transfer an amount of Cash equal to the Class 6 Allocation (to the extent then available) and the Class B Beneficial Interests to the Escrow Agent to effectuate distributions to holders of Allowed Securities Litigation Claims~~, subject to Bankruptcy Court approval after notice and a hearing, or (ii) request that the Bankruptcy Court estimate the Claims to determine the Available Cash Holdback pending allowance of the~~. The District Court will determine the procedure by which holders of Allowed Class 6 Securities Litigation Claims ~~by Final Order. To the extent that the Class 6 Securities Litigation Claims are ultimately Allowed in excess of available insurance coverage actually paid in satisfaction of Allowed Securities Litigation Claims, then on the~~ will receive distributions from the Escrow Agent. Each holder of an Allowed Class 6 Securities Litigation Claim will receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Class 6 Securities Litigation Claim, its share of the Class 6 Allocation pursuant to a plan of allocation to be approved by the District Court. Each Opt-Out Securities Litigation Claim shall be deemed to be a Disputed Claim and shall not receive a distribution from the Disbursing Agent under this Plan unless and until the Bankruptcy Court enters a Final Order allowing such Claim for distribution purposes. On each Available Cash Distribution ~~Dates~~Date, each holder of an Allowed Opt-Out Securities Litigation Claim shall receive, directly or indirectly, ~~in full and complete satisfaction, settlement, and release of and in exchange for such Allowed Securities Litigation Claim, its Pro Rata Share of Available Cash.~~its Pro Rata Share (together with holders of Equity Interests and other holders of Allowed Opt-Out Securities Litigation Claims) of Available Cash and/or Class A Beneficial Interests as determined by the Bankruptcy Court.

**ARTICLE V.**

**PROVISIONS REGARDING VOTING
AND DISTRIBUTIONS UNDER THE PLAN**

**5.1** Voting of Claims. Each holder of an Allowed Claim or Equity Interest in an impaired Class of Claims or Equity Interests that is entitled to vote on the Plan pursuant to Article IV of the Plan, or the holder of a Claim or Equity Interest that has been temporarily Allowed for voting purposes only under Bankruptcy Rule 3018(a), shall

be entitled to vote separately to accept or reject the Plan as provided for in such order as is entered by the Bankruptcy Court approving the Disclosure Statement, or any other order or orders of the Bankruptcy Court. For purposes of calculating the number of Allowed Claims or Equity Interests in a Class that has voted to accept or reject the Plan under section 1126(c) of the Bankruptcy Code, all Allowed Claims or Equity Interests in such Class held by one entity or its "affiliate" (as defined in the Securities Act of 1933 and the rules and regulations promulgated with respect to such Act) shall be aggregated and treated as one Allowed Claim or Equity Interest in such Class; provided, however, that Claims or Equity Interests acquired by an entity from unrelated entities shall not be aggregated for purposes of voting.

**5.2** <u>Enforcement of Statutory Subordination</u>. Securities Litigation Claims shall be subordinated in accordance with section 510(b) of the Bankruptcy Code as reflected in Article IV of the Plan.

**5.3** <u>Nonconsensual Confirmation</u>. If any impaired Class does not accept the Plan by the requisite statutory majorities provided in section 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, the Debtors reserve the right (a) to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code, (b) to reallocate distribution of assets to Claims and Equity Interests if necessary to obtain entry of the Confirmation Order and (c) to amend the Plan in accordance with Article XII of the Plan as necessary to obtain entry of the Confirmation Order.

**5.4** <u>Method of Distributions Under the Plan</u>.

**(a)** <u>Disbursing Agent</u>. All<u>Subject to Section 6.5 hereof, all</u> distributions under the Plan shall be made by the Disbursing Agent. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court; and, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtors <u>or the Liquidating Trust, as the case may be</u>. The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (ii) make all distributions contemplated hereby, (iii) <u>upon Bankruptcy Court approval,</u> employ professionals to represent it with respect to its responsibilities and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof. The ~~Debtors shall pay the~~ reasonable fees and reasonable and actual expenses of the Disbursing Agent. ~~Distributions of Available Cash shall be made on the Available Cash Distribution Dates, provided, however, that the Disbursing Agent shall not be obligated to make distributions if the amount of Available Cash then on hand is less than or equal to $3,000,000. In addition, and notwithstanding the foregoing, nothing shall impair the right of the Debtors to use or retain Available Cash, to satisfy the costs of administering and fully consummating the Plan, administering their estates, and winding down the Debtors' businesses and affairs. On the Final Distribution Date, the~~ <u>shall be paid by the</u>

<u>Trustee after the Effective Date from the assets of the Liquidating Trust.  The</u> Disbursing Agent shall not be obligated to make ~~such a distribution to holders of Allowed Securities Litigation Claims or Allowed Equity Interests if, in the discretion of the Disbursing Agent, there is insufficient Available Cash to make a cost-efficient distribution, taking into account the size of the distribution to be made and the number of recipients of such distribution, in which event such funds shall, in the Debtors' discretion, be donated to a reputable charitable organization~~<u>a distribution of Available Cash pursuant to Sections 4.5 or 4.6 hereof if it is expected that the cost of such distribution would exceed the amount of Available Cash then on hand</u>.

> **(b)** <u>Timing of Distributions</u>.  Unless otherwise provided herein, any distributions and deliveries to be made hereunder to holders of Allowed Claims, other than Securities Litigation Claims, shall be made on the ~~Distribution~~<u>Effective</u> Date~~;~~<u>,</u> any distributions and deliveries to holders of Equity Interests ~~and Allowed Securities Litigation Claims, if any,~~ shall be made on the ~~Available Cash Distribution Dates and Final Distribution Date.~~<u>Effective Date</u> or~~, in each case,~~ as soon thereafter as is practicable<u>, and any distributions and deliveries to holders of beneficial interests in the Liquidating Trust shall be made in accordance with Section 6.5.  The procedures for and timing of distributions from the Escrow Agent to holders of Securities Litigation Claims (other than Opt-Out Securities Litigation Claim) will be determined by the District Court. Distributions to holders of Allowed Opt-Out Securities Claims will be made by the Disbursing Agent as soon as reasonably practicable after allowance or disallowance of such Claims, as the case may be</u>.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

> **(c)** <u>Delivery of Distributions</u>.  Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim or Equity Interest shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtors or their agents, or with the registrar or transfer agent with respect to such Equity Interest, unless the Debtors <u>and/or the Trustee, as the case may be,</u> have been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or interest by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder.

> **(d)** <u>Distributions to Holders of Allowed Claims and Allowed Equity Interests as of the Record Date</u>.  On the <u>applicable</u> Record Date, the claims register<u> and equity transfer registers</u> shall be closed, and there shall be no further changes in the record ~~holder~~<u>holders</u> of any Claim<u> or Equity Interest</u>.  The Disbursing Agent shall have no obligation to recognize any transfer of any Claim <u>or Equity Interest</u> occurring after the Record Date<u>; provided, however, that the Disbursing Agent shall recognize transfers in the Liquidating Trust to the extent they are transferable pursuant to Section 6.5(g) below</u>.  The Disbursing Agent shall instead be authorized and entitled to recognize and deal for

all purposes under the Plan with only those record holders stated on the claims ~~register~~or equity registers as of the close of business on the applicable Record Date.

(e)     <u>Undeliverable and Unclaimed Distributions</u>. If any ~~holder's~~ distribution to a holder of an Allowed Claim or Equity Interest is returned as undeliverable, no further distributions to such holder shall be made unless and until the Disbursing Agent is notified of such holder's then-current address, at which time all missed distributions shall be made as soon as is practicable to such holder, without interest. Checks issued by the Disbursing Agent ~~in respect of Allowed Claims or Equity Interests~~or Trustee shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for re-issuance of any check shall be made in accordance with the notice provisions of Section ~~12.11 of the Plan and to the Disbursing Agent by the holder of the Allowed Claim or Equity Interest to whom such check originally was issued~~12.12 of the Plan. All claims for undeliverable distributions or voided checks shall be made on or before the earlier of (i) one-hundred twenty (120) days after the date such undeliverable distribution was initially made, or (ii) thirty (30) days before the Final Distribution Date, except that checks issued on the Final Distribution Date shall not be reissued. After the earlier of such dates, all such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall, in the ~~Debtors'~~Trustee's discretion, be used first to satisfy the costs of administering and fully consummating the Plan and administering the estates and thereafter any remaining funds shall become Available Cash for distribution in accordance with the Plan. ~~The~~Such holder ~~of any such Claim or Equity Interest~~ shall not be entitled to any other or further distribution under the Plan on account of such Claim or Equity Interest.

(f)     <u>Distributions of Cash</u>. Any payment of Cash made by the Disbursing Agent or Trustee pursuant to the Plan may be made at the option of the Disbursing Agent or Trustee, as the case may be, either by check drawn on a domestic bank or by wire transfer.

~~(g)     Minimum Distributions. No payment of Cash less than $25 shall be made by the Disbursing Agent to any holder of a Claim or Equity Interest unless a written request is made therefor to the Disbursing Agent. Any undistributed amount shall be held over to the next Subsequent Distribution Date.~~

(g)     ~~(h)~~ <u>Withholding and Reporting Requirements</u>. In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim ~~or,~~ Allowed Equity Interest or beneficial interest in the Liquidating Trust that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. The Disbursing Agent has the right, but not the obligation, to not make a distribution until such holder has made

arrangements satisfactory to the Disbursing Agent for payment of any such tax obligations.

**(h)** (i) Setoffs. The Disbursing Agent may set off against or recoup from any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim (before any distribution is made on account of such Claim), the claims, rights and causes of action of any nature that the Debtors may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Disbursing Agent on behalf of the Debtors or the Debtors in Possession (or any successor thereto), of any such claims, rights and causes of action that the Debtors or the Debtors in Possession (or any successor thereto) may possess against such holder; and provided, further, however, that any claims of the Debtors (or any successor thereto) arising before the Commencement Date shall first be setoff against Claims against the Debtors (or any successor thereto) arising before the Commencement Date.

**5.5** Tax Treatment of Escrow Agent. All distributions held by the Escrow Agent in escrow for the benefit of the holders of the Securities Litigation Claims shall be treated as held in a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1.

## ARTICLE VI.

## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

**6.1** Substantive Consolidation. The Plan contemplates and is predicated upon substantive consolidation of the Debtors into a single entity solely for purpose of all actions under the Plan. Entry of the Confirmation Order shall constitute the approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Chapter 11 Cases for all purposes related to the Plan, including, without limitation, for purposes of voting, confirmation and distribution. On and after the Effective Date, (i) all assets and liabilities of the Debtors shall be deemed merged so that all of the assets of the Debtors shall be available to pay all of the liabilities under the Plan as if it were one company, (ii) no distributions shall be made under the Plan on account of intercompany claims among the Debtors, (iii) no distributions will be made under the Plan on account of Impath's interests in its subsidiaries; (iv) all guarantees of the Debtors of the obligations of any other Debtor shall be deemed eliminated so that any claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of the Debtors shall be deemed to be one obligation of the consolidated Debtors, and (v) each and every Claim filed or to be filed in the Chapter 11 Case of any of the Debtors shall be deemed filed against the consolidated Debtors, and shall be deemed one Claim against and obligation of the consolidated Debtors.

**6.2** Continuing Existence. Approval of Class Action Settlement. The Plan incorporates and implements the terms and conditions of the Class Action Settlement and

constitutes and shall be deemed to be a motion for approval of such settlement by the Bankruptcy Court pursuant to Bankruptcy Rule 9019(a) for purposes of voting on and receiving distributions under the Plan.  Upon confirmation of the Plan, (i) the class proof of claim filed by Lead Plaintiffs in the Chapter 11 Cases shall be deemed reduced and Allowed in the amount of the Class 6 Allocation for purposes of distribution, (ii) all other proofs of claim asserting Securities Litigation Claims, other than timely filed Allowed Opt-Out Securities Litigation Claims, shall be disallowed and/or expunged as duplicative of the class proof of claim filed by Lead Plaintiffs; provided, however, that the allowance of the class proof of claim on these terms shall not inure to the benefit of any one individual holder of a Securities Litigation Claim.  The Plan shall constitute a motion (i) pursuant to section 502 of the Bankruptcy Code to allow for distribution purposes the class proof of claim filed by Lead Plaintiffs in the amount of the Class 6 Allocation and (ii) pursuant to Rule 3007 of the Bankruptcy Rules, to disallow and expunge all other Securities Litigation Claims (other than Allowed Opt-Out Securities Litigation Claims), including those listed on Exhibit B hereto.

(a)      On the Effective Date, except to the extent that the Debtors determine otherwise, IMPATH Physician Services, Inc., IMPATH Predictive Oncology, Inc., IMPATH Information Services, Inc., IMPATH-T, Inc. (f/k/a Tamtron Corporation), and IMPATH-M, Inc. (f/k/a Medical Registry Services, Inc.) shall, in one or more transactions, be merged with and into IMPATH Inc., with IMPATH Inc. being the sole surviving entity.  From and after the Effective Date, IMPATH Inc. shall continue in existence for the purpose of (i) winding down the Debtors' affairs, (ii) liquidating, by conversion to Cash or other methods, of any remaining assets of the bankruptcy estates, as expeditiously as reasonably possible, (iii) enforcing and prosecuting claims, interests, rights and privileges of the Debtors and their bankruptcy estates, (iv) resolving Disputed Claims, (v) administering the Plan and taking such actions as are necessary to effectuate the Plan, and (vi) filing appropriate tax returns.

(b)      On or after the Effective Date, pursuant to the purchase agreement with Genzyme, the Debtors will change their corporate names and make the names IMPATH, IMPATH Physician Services, and IMPATH Predictive Oncology available to Genzyme for its use in connection with these businesses.

(c)      From and after the Effective Date, the board of directors of IMPATH Inc. shall consist of two members, comprised of George S. Frazza and Robert E. Campbell (and all bylaws, articles or certificates of incorporation, and related corporate documents are deemed amended by the Plan to permit their continued service).  The officers of IMPATH Inc. immediately prior to the Effective Date shall continue to be officers of IMPATH Inc. following the Effective Date, until their respective resignation or termination.

### **6.3**      Dissolution of the Debtors.

(d)      Upon      On the Effective Date, except to the extent that the Debtors determine otherwise, each of the distribution of all assets of the Debtors and Debtors in

~~Possession pursuant to the Plan and the filing by or on behalf of the Debtors of a certification to that effect with the Bankruptcy Court, IMPATH Inc. and any other Debtors not merged into Impath Inc. shall be~~Debtors shall be merged with and into one or more of the other Debtors and/or deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of ~~IMPATH Inc. or such other~~the Debtors or payments to be made in connection therewith; provided, however, that ~~IMPATH Inc.~~each Debtor shall file with the Office of the Secretary of State for the ~~State~~state of ~~Delaware~~its incorporation, a certificate of merger or dissolution which may be executed by an officer of ~~IMPATH Inc.~~such Debtor without the need for approval by the Board of Directors or shareholders.  From and after the Effective Date, the Debtors shall not be required to file any document, or take any other action, or obtain any approval from the Board of Directors or shareholders, to withdraw their business operations from any states in which the Debtors previously conducted their business operations.

**6.4**     ~~6.3~~Accounts.  The Debtors and/or the Trustee, as applicable, may establish one or more interest-bearing accounts as they determine may be necessary or appropriate to effectuate the provisions of the Plan, and may invest all or a portion of the Cash, (i) in tax exempt instruments, (ii) as permitted by section 345 of the Bankruptcy Code or (iii) as otherwise authorized by the Bankruptcy Court.  All such investments shall be deemed in compliance with section 345 of the Bankruptcy Code, and the Debtors and/or the Trustee, as applicable, shall be relieved from the obligations under section 345(b) of the Bankruptcy Code to obtain a bond from any entity with which the Cash is so deposited or invested.

**6.5**     The Liquidating Trust.

**(a)**     Establishment of Liquidating Trust.  The Debtors shall transfer the Liquidating Trust Assets to the Liquidating Trust on the Effective Date.  The holders of Allowed Securities Litigation Claims and Equity Interests entitled to a distribution under the Plan shall receive beneficial interests in the Liquidating Trust entitling them to share in the proceeds of the Liquidating Trust Assets.

**(b)**     Execution of Liquidating Trust Agreement.  Prior to the Effective Date, the Liquidating Trust Agreement, in a form acceptable to the Debtors and the Trustee and reasonably acceptable to the Equity Committee and the Lead Plaintiffs, shall be executed, and all other necessary steps shall be taken to establish the Liquidating Trust and the beneficial interests therein, which shall be for the benefit of the holders of Allowed Securities Litigation Claims and Equity Interests entitled to a distribution under this Plan.  This Section 6.5 sets forth certain of the rights, duties, and obligations of the Trustee.  In the event of any conflict between the terms of this Section 6.5 and the terms of the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement shall govern.

**(c)**     Purpose of Liquidating Trust.  The Liquidating Trust shall be established for the purpose of liquidating and distributing its assets and for prosecuting

certain of the Debtors' claims and causes of action, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

**(d)** Liquidating Trust Assets. The Liquidating Trust shall consist of the Liquidating Trust Assets. On the Effective Date, the Debtors shall transfer and deliver all the Liquidating Trust Assets to the Liquidating Trust, subject to (i) any and all claims (excluding Securities Litigation Claims, but including Opt-Out Securities Litigation Claims) in Articles II and IV hereof that have not been paid as of the Effective Date and (ii) any expenses incurred and unpaid by the Debtors in respect of, among other things, consummation of the Plan and winding up of their estates. In addition, all bank accounts established by the Debtors to fund Claims and Equity Interests receiving payments under the Plan shall be held by the Trustee in the name of the Liquidating Trust subject to the provisions of the Plan. The Debtors also shall transfer and deliver to the Trustee all books, records, and other documents, including computer files and other electronic media, necessary or desirable for the Liquidating Trustee's administration of the Liquidating Trust and the completion of the wind-up of the Debtors' affairs.

**(e)** The Trustee. Anthony H.N. Schnelling of Bridge Associates, LLC shall be the initial Trustee effective as of the Effective Date.

**(f)** Duties of the Trustee.

(i) In furtherance of and consistent with the purpose of the Liquidating Trust and the Plan, the Trustee shall have the power, authority, standing, and duty to (A) hold, manage, sell, and distribute the Liquidating Trust Assets to the holders of Allowed Claims and Equity Interests in accordance with the Plan, (B) prosecute and resolve, in the names of the Debtors and/or the name of the Trustee, the Debtors' interests in all claims and causes of action, (C) prosecute and resolve objections to Disputed Claims, (D) perform all of the obligations and functions of the Debtors and/or the Trustee under the Plan and applicable law, and (E) administer the closure of the Chapter 11 Cases. The Trustee shall also be responsible for all decisions and duties with respect to the Liquidating Trust and the Liquidating Trust Assets. In all circumstances, the Trustee shall act in the best interests of all beneficiaries of the Liquidating Trust and in furtherance of the purpose of the Liquidating Trust. The Trustee shall consult with Lead Plaintiffs and their counsel in connection with the prosecution or settlement of contingent and/or unliquidated claims held by the Debtors and/or the holders of Securities Litigation Claims arising from or relating to the accounting irregularities that are the subject of the Securities Class Action Lawsuit that are not released pursuant to the Plan or the Class Action Settlement. In addition, in accordance with the Settlement Agreement, at the option of the Trustee in his sole discretion, the Trustee shall be deemed to be the assignee of all of the rights and interests of the holders of Securities Litigation Claims with respect to claims arising from or relating to the alleged accounting issues that are the subject of the Securities Litigation Claims that are not released pursuant to the Plan or the Class Action Settlement, with the exclusive power, authority, and standing to prosecute and settle such claims for the benefit of the Liquidating Trust.

(ii)     As of the Effective Date, the Trustee shall be authorized and directed to exercise all powers regarding the Debtors' tax matters, including filing tax returns, to the same extent as if the Trustee were the debtor in possession. The Trustee shall (A) complete and file within the applicable time periods proscribed by law, to the extent not previously filed, the Debtors' final federal, state, and local tax returns, (B) request an expedited determination of any unpaid tax liability of the Debtors under section 505(b) of the Bankruptcy Code for all tax periods of the Debtors ending after the Commencement Date through the liquidation of the Debtors as determined under applicable tax laws, to the extent not previously requested, and (C) represent the interest and account of the Debtors before any taxing authority in all matters, including, but not limited to, any action, suit, proceeding, or audit.

(g)     Transferability of Liquidating Trust Interests. The beneficial interests in the Liquidating Trust shall be certificated and shall be transferable only if the Trustee seeks and obtains relief from the Securities and Exchange Commission in connection with the reporting requirements of the Liquidating Trust under the Securities Exchange Act of 1934, as amended, and in a manner acceptable to the Trustee. In the absence of such relief, such beneficial interests shall not be certificated and shall not be transferable (except as otherwise provided in the Liquidating Trust Agreement).

(h)     Cash. The Trustee may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code; provided, however, that such investments are investments that are not prohibited to be made by a liquidating trust under Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

(i)     Compensation of the Trustee. The Trustee shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy proceedings. The costs and expenses of the Liquidating Trust, including the fees and expenses of the Trustee and his retained professionals shall be paid out of the Liquidating Trust Assets. Such costs and expenses shall be considered administrative expenses of the Debtors' estates.

(j)     Distribution of Liquidating Trust Assets. The Trustee shall distribute from the Liquidating Trust at least annually and in accordance with the Liquidating Trust Agreement (with an initial distribution as soon after the Effective Date as is practicable) to each holder of a beneficial interest in the Liquidating Trust, such holder's respective share of Available Cash on hand (including any Cash received from the Debtors on the Effective Date, treating as Cash for purposes of this Section 6.5 any permitted investments under Section 6.5(h) hereof); provided, however, that the Trustee shall not be obligated to make a distribution if it is expected that the cost of such distribution would exceed the amount of Available Cash; and provided, further, however, that prior to making any distribution to holders of beneficial interests in the Liquidating Trust, the Trustee shall retain such amounts (i) as would be distributable to a holder of a Disputed Claim if such Disputed Claim had been Allowed prior to the time of such