UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
                                            :
In re                                       :    Chapter 11 Case No.
                                            :
IMPATH INC., et al.,                        :    03-16113 (PCB)
                                            :
            Debtors.                        :    (Jointly Administered)
                                            :
                                            :
-----------------------------------------------------------x

## DEBTORS' ~~FIRST~~SECOND AMENDED JOINT PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE


                         WEIL, GOTSHAL & MANGES LLP
                         767 Fifth Avenue
                         New York, New York 10153
                         (212) 310-8000
                         Attorneys for Debtors
                         and Debtors in Possession

Dated: January ~~14,~~18, 2005
       New York, New York

# TABLE OF CONTENTS

**Page**

Article I.      DEFINITIONS AND INTERPRETATION ............................................. 2

  1.1     Administrative Expense Claim ................................................. 2

  1.2     Allowed ................................................................................ 2

  1.3     Available Cash ..................................................................... 2

  1.4     Available Cash Distribution Dates ........................................ 3

  1.5     Ballots ................................................................................ 3

  1.6     Bankruptcy Code ................................................................. 3

  1.7     Bankruptcy Court................................................................. 3

  1.8     Bankruptcy Rules ................................................................ 3

  1.9     Bar Dates............................................................................ 3

  1.10    Business Day....................................................................... 3

  1.11    Case Interest Rate .............................................................. 3

  1.12    Cash.................................................................................. 4~~3~~

  1.13    Chapter 11 Cases............................................................... 4~~3~~

  1.14    Claim ................................................................................. 4

  1.15    Class .................................................................................. 4

  1.16    Class 6 Allocation .............................................................. 4

  1.17    Class A Beneficial Interest.................................................. 4

  1.18    Class A Share..................................................................... 4

  1.19    Class B Beneficial Interest.................................................. 4

  1.20    Class C Beneficial Interest.................................................. 4

  1.21    Class C Share..................................................................... 4

  ~~1.19~~1.22 ........................................................Class Action Settlement 4

  ~~1.20~~1.23 ...................................................................... Collateral 4

  ~~1.21~~1.24 ................................................... Commencement Date 4~~5~~

  ~~1.22~~1.25 ............................................................ Common Stock 4~~5~~

  ~~1.23~~1.26 ................................................... Confirmation Date 5

  ~~1.24~~1.27 ..............................................Confirmation Hearing 5

  ~~1.25~~1.28 ............................................... Confirmation Order 5

# TABLE OF CONTENTS
## (continued)

Page

1.26 1.29 .................................................................... Credit Agreement 5

1.27 1.30 ..................................................................Creditors Committee 5

1.28 1.31 .................................................................... Culpable Individual 5

1.29 1.32 ...................................................................... D&O Insurers 5

1.30 1.33 .....................................................................................Debtors 5

1.31 1.34 .................................................................... Debtors in Possession 5

1.32 1.35 ....................................................................Deficiency Claim 5 6

1.33 1.36 ....................................................................DIP Lenders 5 6

1.34 1.37 ....................................................................Disbursing Agent 5 6

1.35 1.38 .................................................................. Disclosure Statement 6

1.36 1.39 ...................................................................Disputed Claim 6

1.37 1.40 ................................................................... District Court 6

1.38 1.41 .....................................................................Effective Date 6

1.39 1.42 ....................................................................Equity Committee 6

1.40 1.43 ......................................................................Equity Interest 6

1.44    Equity Value ............................................................................. 6

1.41 1.45 ...................................................... Escrow Agent 6 7

1.42 1.46 ..................................................... Estimated Liquidation Expenses 6 7

1.43 1.47 ....................................................................Face Amount 6 7

1.44 1.48 .................................................... Final Distribution Date 7

1.45 1.49 .......................................................................Final Order 7

1.46 1.50 ....................................................General Unsecured Claim 7

1.47 1.51 ...................................................................Impaired 7 8

1.48 1.52 ....................................................................Indemnity Reserve 7 8

1.49 1.53 ....................................................................Lead Plaintiffs 7 8

1.50 1.54 .................................................... Lender Claim 7 8

1.51 1.55 ...................................................... Lenders 8

1.52 1.56 ...................................................... Liquidating Trust 8

1.53 1.57 .................................................... Liquidating Trust Agreement 8

1.54~~1.58~~..............................................................Liquidating Trust Assets 8

1.55~~1.59~~.......................................................Liquidating Trust Claims Reserve 8

1.56~~1.60~~...................................................Opt-Out Securities Litigation Claims 8

1.57~~1.61~~.......................................................................... Other Secured Claim 8

1.58~~1.62~~............................................................................................Plan 8~~9~~

1.59~~1.63~~.................................................................Priority Non-Tax Claim 8~~9~~

1.60~~1.64~~........................................................................Priority Tax Claim 8~~9~~

1.61~~1.65~~.................................................................................... Professional 9

1.62~~1.66~~.................................................................................. Pro Rata Share 9

1.63~~1.67~~..................................................................................... Record Date 9

1.64~~1.68~~........................................................................................Schedules 9

1.65~~1.69~~................................................................................Secured Claim 9

1.66~~1.70~~............................................Securities Class Action Lawsuit 9~~10~~

1.67~~1.71~~...................................................Securities Litigation Claim 9~~10~~

1.68~~1.72~~.......................................................... Settlement Agreement 9~~10~~

1.69~~1.73~~...................................................Subsequent Distribution Date 10

1.70~~1.74~~........................................................................................Tort Claims 10

1.71~~1.75~~................................................................................................Trustee 10

Article II.  TREATMENT AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS ..................... 10~~11~~

2.1  Administrative Expense Claims.......................................................... 10~~11~~

2.2  Professional Compensation and Reimbursement Claims ........................ 11

2.3  Priority Tax Claims.................................................................................. 11

Article III.  CLASSIFICATION AND VOTING OF CLAIMS AND EQUITY INTERESTS ..................................................................... 11~~12~~

Article IV.  TREATMENT OF CLAIMS AND EQUITY INTERESTS ................... 12

4.1  Class 1 – Priority Non-Tax Claims........................................................ 12

4.2  Class 2 – Other Secured Claims........................................................ 12~~13~~

4.3  Class 3 – Lender Claims ....................................................... 13~~14~~

4.4  Class 4 - General Unsecured Claims ...................................... 14

| | | |
|---|---|---|
| 4.5 | Class 5 – Equity Interests | 14 |
| 4.6 | Class 6 –Securities Litigation Claims | ~~14~~15 |
| Article V. | PROVISIONS REGARDING VOTING AND DISTRIBUTIONS UNDER THE PLAN | ~~15~~16 |
| 5.1 | Voting of Claims | ~~15~~16 |
| 5.2 | Enforcement of Statutory Subordination | ~~15~~16 |
| 5.3 | Nonconsensual Confirmation | ~~15~~16 |
| 5.4 | Method of Distributions Under the Plan | 16 |
| 5.5 | Tax Treatment of Escrow Agent | ~~18~~19 |
| Article VI. | MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN | ~~18~~19 |
| 6.1 | Substantive Consolidation | ~~18~~19 |
| 6.2 | Approval of Class Action Settlement | 19 |
| 6.3 | Dissolution of the Debtors | ~~19~~20 |
| 6.4 | Accounts | ~~19~~20 |
| 6.5 | The Liquidating Trust | 20 |
| 6.6 | Securities Exempt | 26 |
| 6.7 | Cancellation of Securities | ~~26~~27 |
| Article VII. | PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS | ~~26~~27 |
| 7.1 | No Distributions Pending Allowance | ~~26~~27 |
| 7.2 | Resolution of Disputed Claims | ~~27~~28 |
| 7.3 | Estimation of Claims | ~~27~~28 |
| 7.4 | Amounts Retained to Pay Disputed Claims and Allowed Opt-Out Securities Litigation Claims | 28 |
| 7.5 | Allowance of Disputed Claims | ~~28~~29 |
| 7.6 | No Distribution in Respect of Disallowed Claims | ~~28~~29 |
| Article VIII. | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | ~~28~~29 |
| 8.1 | Executory Contracts and Unexpired Leases | ~~28~~29 |

| 8.2 | Approval of Rejection of Executory Contracts and Unexpired Leases | 29 |
| 8.3 | Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan | 29 |
| 8.4 | Retiree Benefits | ~~29~~30 |
| 8.5 | Indemnification and Reimbursement Obligations | ~~29~~30 |
| Article IX. | EFFECT OF CONFIRMATION OF PLAN | ~~30~~31 |
| 9.1 | Term of Injunctions or Stays | ~~30~~31 |
| 9.2 | Revesting of Assets | ~~30~~31 |
| 9.3 | Preservation of Certain Causes of Action | ~~30~~31 |
| 9.4 | Certain Causes of Action Released and Extinguished | 31 |
| 9.5 | Release of Directors, Officers and Employees | ~~31~~32 |
| 9.6 | Exculpation | 32 |
| 9.7 | Injunction | ~~32~~33 |
| Article X. | EFFECTIVENESS OF THE PLAN | ~~32~~33 |
| 10.1 | Conditions Precedent to the Effective Date | ~~32~~33 |
| Article XI. | RETENTION OF JURISDICTION | ~~33~~34 |
| Article XII. | MISCELLANEOUS PROVISIONS | ~~34~~35 |
| 12.1 | Dissolution of the Creditors Committee and Equity Committee | ~~34~~35 |
| 12.2 | Termination of Audit Committee | 35 |
| 12.3 | Effectuating Documents and Further Transactions | ~~35~~36 |
| 12.4 | Corporate Action | ~~35~~36 |
| 12.5 | Exemption from Transfer Taxes | ~~35~~36 |
| 12.6 | Post-Effective Date Fees and Expenses | ~~35~~36 |
| 12.7 | Request for Expedited Determination of Taxes | 36 |
| 12.8 | Payment of Statutory Fees | ~~36~~37 |
| 12.9 | Modification of Plan | ~~36~~37 |
| 12.10 | Withdrawal or Revocation | ~~36~~37 |
| 12.11 | Binding Effect | ~~36~~37 |
| 12.12 | Notices | 37 |

**TABLE OF CONTENTS**
**(continued)**

Page

12.13  Severability ................................................................................ 38

12.14  Governing Law .......................................................................... 3839

12.15  Headings .................................................................................... 3839

12.16  Exhibits ..................................................................................... 3839

12.17  Failure of Effective Date .......................................................... 3839

12.18  Miscellaneous. .......................................................................... 39

12.19  Plan Controls ............................................................................ 39

WEIL, GOTSHAL & MANGES LLP
Attorneys for Debtors and
Debtors in Possession
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
George A. Davis, Esq. (GD 2761)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                        :

In re                         :       **Chapter 11 Case No.**
                         :

**IMPATH INC., et al.,**       :       **03-16113 (PCB)**
                         :

       **Debtors.**         :       **(Jointly Administered)**
                         :

                         :

-------------------------------------------------------------x

## DEBTORS' ~~FIRST~~SECOND AMENDED JOINT PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

       IMPATH Inc., IMPATH Physician Services, Inc., IMPATH Predictive
Oncology, Inc., IMPATH Information Services, Inc., IMPATH-T, Inc. (f/k/a Tamtron
Corporation), and IMPATH-M, Inc. (f/k/a Medical Registry Services, Inc.) (collectively,
"Impath" or the "Debtors") propose the following joint chapter 11 plan of liquidation (the
"Plan") pursuant to section 1121(a) of the Bankruptcy Code. The Debtors are proponents
of the Plan within the meaning of section 1129 of the Bankruptcy Code.

       The Plan provides for the liquidation and conversion of all of the Debtors'
respective assets to cash and the distribution of the proceeds thereof, net of fees and
expenses, to holders of Claims and Equity Interests in accordance with their relative
priority. Generally, secured and unsecured creditors will be paid in full with interest.
The residual value of the Debtors' estates~~, estimated at $79,000,000~~[1] (excluding
contingent and/or unliquidated assets), will then be divided between holders of Allowed
Securities Litigation Claims and Equity Interests in accordance with the terms of the
Class Action Settlement, annexed hereto as Exhibit A.

---

[1] ~~The estimate of Available Cash is based upon a number of significant assumptions. The actual amount of Available Cash may be higher or lower than such estimate.~~

The Plan is a joint plan of liquidation and provides that the Debtors' Chapter 11 Cases will be substantively consolidated. Accordingly, and except as expressly provided for herein, all provisions of the Plan, including without limitation, the definitions and distributions to creditors, shall apply to the assets and claims of the consolidated bankruptcy estates of the Debtors. All holders of Claims against, and Equity Interests in, the Debtors are encouraged to read the Plan and Disclosure Statement in their entirety before voting to accept or reject the Plan.

### ARTICLE I.

## DEFINITIONS AND INTERPRETATION

Definitions. As used in the Plan, the following terms shall have the respective meanings specified below:

**1.1** Administrative Expense Claim means any right to payment constituting a cost or expense of administration of any of the Chapter 11 Cases allowed under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtors' estates, (b) any actual and necessary costs and expenses of operating the Debtors' businesses, (c) any indebtedness or obligations incurred or assumed by the Debtors, as Debtors in Possession, during the Chapter 11 Cases, (d) any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under sections 330 or 503 of the Bankruptcy Code and (e) any fees or charges assessed against the estates of the Debtors under section 1930 of chapter 123 of title 28 of the United States Code.

**1.2** Allowed means, (i) with reference to any Claim, (a) any Claim against the Debtors which has been listed by the Debtors in their Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (b) any Claim allowed pursuant to the Plan, (c) any Claim which is not Disputed, (d) any Claim that is compromised, settled or otherwise resolved pursuant to the authority granted to the Debtors pursuant to a Final Order of the Bankruptcy Court or under Section 7.2 of the Plan or (e) any Claim which, if Disputed, has been Allowed by Final Order; provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder, and (ii) with reference to any Equity Interest, any Equity Interest registered in the stock register maintained by or on behalf of the Debtors as of the applicable Record Date. Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Claim from and after the Commencement Date.

**1.3** Available Cash means, as of any given date, all Cash of the Debtors or the Liquidating Trust realized from the sale or other disposition or realization of their assets, all interest of the Debtors or the Liquidating Trust earned on invested funds or from any

other source, and all recoveries on contingent and unrealized assets (subject to the terms of the Class Action Settlement), such as, without limitation, claims against third parties for damages arising in respect of the subject matter underlying the Securities Litigation Claims, less (i) Cash of the Debtors' estates or the Liquidating Trust to be distributed to the holders of Allowed Claims and to holders of Disputed Claims (other than Opt-Out Securities Litigation Claims) to the extent they become Allowed Claims, (ii) the Estimated Liquidation Expenses, (iii) the Class 6 Allocation, and (iv) the amount of Cash to be contributed by the Debtors or the Trustee to the Indemnity Reserve; provided, however, that Available Cash shall not include collateral security or any proceeds of collateral to the extent securing any Allowed Secured Claims.

**1.4** Available Cash Distribution Dates mean the Effective Date and the subsequent dates upon which distributions of Available Cash are made to holders of beneficial interests in the Liquidating Trust.

**1.5** Ballots mean each of the ballot forms distributed by the Debtors to each member of an impaired Class entitled to vote under Article III hereof in connection with the solicitation of acceptances or rejections of the Plan.

**1.6** Bankruptcy Code means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases, as in effect on the Confirmation Date.

**1.7** Bankruptcy Court means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Cases or any other court with jurisdiction over the Chapter 11 Cases.

**1.8** Bankruptcy Rules mean, collectively, the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any Local Rules of the Bankruptcy Court, as now in effect or hereafter amended.

**1.9** Bar Dates mean the dates designated by the Bankruptcy Court as the last dates for filing proofs of Claim (other than Professional Fee Claims) against the Debtors.

**1.10** Business Day means any day other than a Saturday, Sunday or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order, and the Friday after Thanksgiving Day.

**1.11** Case Interest Rate means, except to the extent a holder of an Allowed Claim has previously agreed or agrees to a different treatment, simple interest at the rate of 6 5/8% per annum from the Commencement Date through the respective dates on which Allowed Claims are paid; provided that Allowed General Unsecured Claims paid by the Debtors prior to confirmation of the Plan, the holders of which did not negotiate their payment checks within ninety (90) days of the issuance of such checks, shall only be entitled to interest through the date on which their checks were originally issued.

**1.12**    Cash means legal tender of the United States of America.

**1.13**    Chapter 11 Cases mean the Debtors' jointly administered chapter 11 cases pending in the Bankruptcy Court.

**1.14**    Claim has the meaning set forth in section 101(5) of the Bankruptcy Code, against any Debtor.

**1.15**    Class means a category of holders of Claims or Equity Interests as set forth in Article III of the Plan, classified by the Plan pursuant to section 1123(a)(1) of the Bankruptcy Code.

**1.16**    Class 6 Allocation means the sum of: (i) $8,000,000, (ii) 15,000,000 of proceeds of the Debtors' directors and officers insurance policies with the D&O Insurers in connection with the Securities Litigation Claims, subject to funds allocable to the Indemnity Reserve pursuant to the Settlement Agreement, and (iii) 22% of any net proceeds recovered by the Trustee on account of contingent and/or unliquidated claims held by the Debtors and/or the holders of Securities Litigation Claims arising from or relating to the accounting irregularities that are the subject of the Securities Class Action Lawsuit that are not released pursuant to the Plan or the Class Action Settlement, ~~less the amount of $400,000 for the Indemnity Reserve~~.

**1.17**    Class A Beneficial Interest means a beneficial interest in the Liquidating Trust to be issued to each holder of an Allowed Equity Interest, which entitles its holder to receive its Pro Rata Share of distributions from the Liquidating Trust of Available Cash ~~in the proportion that the Class A Beneficial Interest bears to all then outstanding Class A Beneficial Interests.~~.

**1.18**    Class A Share means the percentage calculated by dividing the Equity Value by the sum of the Equity Value plus the total amount of the Allowed Opt-Out Securities Litigation Claims.

**1.19**    ~~1.18~~ Class B Beneficial Interest means a beneficial interest in the Liquidating Trust which entitles ~~its holder~~the Escrow Agent to receive any unpaid portion of the Class 6 Allocation from the Liquidating Trust after the Effective Date.

**1.20**    Class C Beneficial Interest means a beneficial interest in the Liquidating Trust to be issued to holders of Allowed Opt-Out Securities Litigation Claims (if any) pursuant to Section 4.6(b) of the Plan which will entitle its holder to receive its Pro Rata Share of distributions from the Liquidating Trust of Available Cash.

**1.21**    Class C Share means the percentage calculated by dividing the total amount of the Allowed Opt-Out Securities Litigation Claims by the sum of the Equity Value and the total amount of the Allowed Opt-Out Securities Litigation Claims.

**1.22** ~~1.19~~ Class Action Settlement means the settlement and release of the Securities Class Action Lawsuit, the terms and conditions for which are set forth in the Settlement Agreement.

**1.23** ~~1.20~~ Collateral means any property or interest in property of any Debtor subject to a lien, charge, or other encumbrance to secure the payment or performance of a Claim, which lien, charge or encumbrance is valid, perfected and enforceable under applicable law, and is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

**1.24** ~~1.21~~ Commencement Date means September 28, 2003, the date on which the Debtors commenced their Chapter 11 Cases.

**1.25** ~~1.22~~ Common Stock means the common stock of IMPATH Inc. authorized as of the Commencement Date.

**1.26** ~~1.23~~ Confirmation Date means the date of entry of the Confirmation Order by the clerk of the Bankruptcy Court.

**1.27** ~~1.24~~ Confirmation Hearing means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

**1.28** ~~1.25~~ Confirmation Order means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.29** ~~1.26~~ Credit Agreement means that certain credit agreement dated as of June 4, 2001 by and among the Debtors, Fleet National Bank, for itself, as Agent and Lender, and the other Lenders, as amended.

**1.30** ~~1.27~~ Creditors Committee means the official committee of unsecured creditors appointed in the Chapter 11 Cases on October 6, 2003, pursuant to section 1102 of the Bankruptcy Code.

**1.31** ~~1.28~~ Culpable Individual means any present or former director, officer, or employee of the Debtors who is or has been convicted of a crime, or found in fact in any judicial proceeding to have committed knowing and intentional fraud, with respect to matters alleged as a basis for liability in the Securities Class Action Lawsuit.

**1.32** ~~1.29~~ D&O Insurers mean National Union Fire Insurance of Pittsburgh, PA ("National Union"), ACE America Insurance Company ("ACE"), or Travelers Casualty & Surety Company ("Travelers"), the issuers of the Debtors' directors and officers insurance policies and party to the Class Action Settlement.

**1.33** ~~1.30~~ Debtors mean, collectively, IMPATH Inc., IMPATH Physician Services, Inc., IMPATH Predictive Oncology, Inc., IMPATH Information Services, Inc.,

IMPATH-T, Inc. (f/k/a Tamtron Corporation), and IMPATH-M, Inc. (f/k/a Medical Registry Services, Inc.).

**1.34** ~~1.31~~ Debtors in Possession mean the Debtors in their capacity as Debtors in Possession in the Chapter 11 Cases pursuant to sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

**1.35** ~~1.32~~ Deficiency Claim means the portion, if any, of a Secured Claim that is unsecured.

**1.36** ~~1.33~~ DIP Lenders mean the lenders from time to time under that certain Revolving Credit and Guarantee Agreement, dated as of September 30, 2003, by and among the Debtors, Fleet National Bank, for itself, as Agent and DIP Lender, and the other DIP Lenders, as amended.

**1.37** ~~1.34~~ Disbursing Agent means, on or prior to the Effective Date, the Debtors or any designee of the Debtors, including the Trustee, and, after the Effective Date, the Trustee or any of his designees all in their sole discretion, to serve as disbursing agent under the Plan in respect of Allowed Claims and Equity Interests and beneficial interests in the Liquidating Trust.

**1.38** ~~1.35~~ Disclosure Statement means the written disclosure statement (including all exhibits and schedules thereto) that relates to the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**1.39** ~~1.36~~ Disputed Claim means, any Claim not otherwise Allowed or paid pursuant to the Plan or an order of the Bankruptcy Court (i) which has been or hereafter is listed on the Schedules as unliquidated, contingent, or disputed, and which has not been resolved by written agreement of the parties or an order of the Bankruptcy Court, (ii) which is disputed under the Plan, (iii) as to which any Debtor or the Trustee has interposed a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order, and (iv) any Claim proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly filed.

**1.40** ~~1.37~~ District Court means the United States District Court for the Southern District of New York.

**1.41** ~~1.38~~ Effective Date means the first Business Day on which the conditions specified in Section 10.1 of the Plan have been satisfied or waived.

**1.42** ~~1.39~~ Equity Committee means the official committee of equity security holders of IMPATH Inc., pursuant to section 1102 of the Bankruptcy Code.

**1.43** ~~1.40~~ Equity Interest means the interest of any holder of equity securities of the Debtors represented by the issued and outstanding shares of common stock of IMPATH Inc. whether or not transferable, including any existing options, warrants or rights, contractual or otherwise, to acquire such equity interest.

**1.44** Equity Value means the total amount of the "Funds Available to Distribute to Holders of Equity Interests and Securities Litigation Claims," as calculated in the Liquidation Analysis attached as Exhibit B to the Disclosure Statement, determined by the Bankruptcy Court as of the Confirmation Date, less $8,000,000, provided, however, that in the event of any net recovery from the prosecution of contingent and/or unliquidated claims, the amount of the Equity Value shall be adjusted upward by the amount of such net recovery.

**1.45** ~~1.41~~ Escrow Agent means the person designated by the District Court to make distributions to holders of Securities Litigation Claims in accordance with the Class Action Settlement.

**1.46** ~~1.42~~ Estimated Liquidation Expenses mean the amount of Cash estimated by the Debtors or the Trustee, as the case may be, from time to time, to be necessary to adequately fund the Plan, to pursue and recover contingent assets, and complete the administration of the Chapter 11 Cases on and after the Effective Date.

**1.47** ~~1.43~~ Face Amount means (i) when used in reference to a Disputed Claim, the full stated amount claimed by the holder of such Claim in any proof of Claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, (ii) when used in reference to an unliquidated Claim, the amount of the Claim as estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code, and (iii) when used in reference to an Allowed Claim, the allowed amount of such Claim.

**1.48** ~~1.44~~ Final Distribution Date means a date, as determined by the Trustee, (i) which is after the liquidation into Cash of all Liquidating Trust Assets (other than those assets abandoned by the Trustee) and collection of other sums due or otherwise remitted or returned to the Trustee, including from prosecution of claims against third parties and (ii) on or after final resolution of all Disputed Claims.

**1.49** ~~1.45~~ Final Order means an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or motion for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, or move to reargue or rehear shall have been waived in writing in form and substance satisfactory to the Debtors or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been upheld by the highest court to which such order was appealed, or from which certiorari, reargument or rehearing was sought and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired, provided, however, the possibility

that a timely motion under Rules 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not prevent such order from being a Final Order.

**1.50** ~~1.46~~ General Unsecured Claim means any unsecured, non-priority Claim against the Debtors that is not an Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, or Securities Litigation Claim.

**1.51** ~~1.47~~ Impaired means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.52** ~~1.48~~ Indemnity Reserve means the reserve established and maintained by the Liquidating Trust into which the Disbursing Agent will deposit $1,300,000 on the Effective Date for payment of indemnification and reimbursement obligations pursuant to Section 8.5 hereof.

**1.53** ~~1.49~~ Lead Plaintiffs mean Southwest Carpenters Pension Trust, f/k/a Carpenters Pension Trust for Southern California and United Brotherhood of Carpenters Pensions Fund, lead plaintiffs in the Securities Class Action Lawsuit.

**1.54** ~~1.50~~ Lender Claim means a Claim of any Lender (i) arising under or in connection with the Credit Agreement and all documents relating thereto or (ii) arising under or in connection with any guaranty of the obligations under the Credit Agreement.

**1.55** ~~1.51~~ Lenders mean the lenders from time to time party to the Credit Agreement.

**1.56** ~~1.52~~ Liquidating Trust means the liquidating trust described in Section 6.5 hereof.

**1.57** ~~1.53~~ Liquidating Trust Agreement means the agreement governing the Liquidating Trust, the form of which will be filed with the Bankruptcy Court prior to the Confirmation Date.

**1.58** ~~1.54~~ Liquidating Trust Assets mean all of the assets of the Debtors as of the Effective Date, other than any assets distributed by the Debtors to holders of Allowed Claims (including Allowed Securities Litigation Claims) ~~or Equity Interests~~ on the Effective Date in accordance with the Plan. The Liquidating Trust Assets shall include, without limitation, all cash and bank accounts, and all contingent and/or unliquidated claims arising from or relating to the accounting irregularities that are the subject of the Securities Class Action Lawsuit that are not released pursuant to this Plan or the Class Action Settlement.

~~**1.55** Liquidating Trust Claims Reserve~~

**1.59** Liquidating Trust Claims Reserve ~~means any Liquidating Trust Assets allocable to, or retained on account of, Opt-Out Securities Litigation Claims as held by a discrete trust for federal income tax purposes consisting of separate and independent shares to be established in respect of each Opt-Out Securities Litigation Claim, in accordance with the trust provisions of the Tax Code (section 641 *et seq.*).~~has the meaning ascribed to such term in Section 6.5(l)(4)(i) hereof. The trustee is not required to segregate any assets treated as held in reserve under such provision.

**1.60** ~~1.56~~ Opt-Out Securities Litigation Claims means any and all Securities Litigation Claims, the holders of which have timely filed a proof of claim in these Chapter 11 Cases relating thereto and timely elected to opt out of the Class Action Settlement.

**1.61** ~~1.57~~ Other Secured Claim means any Secured Claim, other than Lender Claims and the Claims of the DIP Lenders.

**1.62** ~~1.58~~ Plan means this joint chapter 11 plan of liquidation for each of the Debtors, including all exhibits, supplements, and schedules annexed hereto, either in its present form or as it may be altered, supplemented, amended or modified from time to time.

**1.63** ~~1.59~~ Priority Non-Tax Claim means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in sections 507(a)(2)-(7) and (9) of the Bankruptcy Code.

**1.64** ~~1.60~~ Priority Tax Claim means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.65** ~~1.61~~ Professional means (i) any professional employed in the Chapter 11 Cases pursuant to section 327 or 1103 of the Bankruptcy Code and (ii) any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to ~~section~~sections 503(b)(3) and (b)(4) of the Bankruptcy Code.

**1.66** ~~1.62~~ Pro Rata Share means, at any time, ~~(i)~~ with respect to distributions from the ~~Debtors' estates or the Liquidating Trust, the proportion that the Face Amount of a Claim in a particular Class, other than a Securities Litigation Claim, bears to the aggregate Face Amount of all Claims, including Disputed Claims, in such Class and (ii) with respect to distributions of Available Cash on the Effective Date and Class A~~Liquidating Trust to holders of Class A Beneficial Interests and Class C Beneficial Interests, (i) for holders of Class A Beneficial Interests, the proportion that each such holder's Class A Beneficial Interests bears to the total amount of all Class A Beneficial Interests, multiplied by the Class A Share of the distribution, and (ii) for holders of Class C Beneficial Interests, the proportion that ~~an Equity Interest or Allowed Opt-Out Securities Claim~~each such holder's Class C Beneficial Interests bears to the ~~aggregate~~

~~amount of all Equity Interests and Allowed Opt-Out Securities Litigation Claims, as determined by the Bankruptcy Court~~total amount of all Class C Beneficial Interests, multiplied by the Class C Share of the distribution.

**1.67** ~~1.63~~ Record Date means (i) with respect to Claims, the close of business on the fifth Business Day prior to the Confirmation Date, with respect to Securities Litigation Claims, such other date as may be established by the District Court, or (ii) with respect to Equity Interests, the close of business on the fifth Business Day prior to the first Available Cash Distribution Date.

**1.68** ~~1.64~~ Schedules mean the schedules of assets and liabilities and the statements of financial affairs filed by each of the Debtors on December 15, 2003 as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, including any supplements or amendments thereto through the Confirmation Date.

**1.69** ~~1.65~~ Secured Claim means a Claim (i) secured by Collateral, the amount of which is equal to or less than the value of such Collateral (a) as set forth in the Plan, (b) as agreed to by the holder of such Claim and the Debtors after reasonable notice to the Creditors Committee and the Equity Committee, or (c) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code or (ii) the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code; provided, that to the extent that the Collateral or right of setoff is less than the value of the related Claim, such deficiency shall be a General Unsecured Claim.

**1.70** ~~1.66~~ Securities Class Action Lawsuit means the consolidated federal securities class action lawsuit pending against Impath Inc. and certain of its former officers in the District Court entitled In re Impath Inc. Securities Litigation, Master File No. 03-CIV-5667 (DAB) (SDNY).

**1.71** ~~1.67~~ Securities Litigation Claim means any Claim against any of the Debtors, whether or not subject to an existing lawsuit, for damages or rescission arising from the purchase or sale of a security of the Debtors, that is subordinated to other Claims in accordance with section 510(b) of the Bankruptcy Code.

**1.72** ~~1.68~~ Settlement Agreement means the agreement, dated January 14, 2005, by and among IMPATH Inc., the Lead Plaintiffs, the D&O Insurers, and certain former officers of the Debtors, providing for the settlement, release and dismissal of the Securities Class Action Lawsuit, a copy of which is annexed as Exhibit A hereto.

**1.73** ~~1.69~~ Subsequent Distribution Date means, following the Effective Date, a date which shall occur at the end of each subsequent three-month period, or more or less frequently as may be determined by the Disbursing Agent, on which a distribution of Cash (or, as provided in Section 6.5(a) hereof, beneficial interests in the Liquidating Trust) is made to the holders of Allowed Claims or Allowed Equity Interests, in accordance with Article V of the Plan.

**1.74** ~~1.70~~ Tort Claims mean any Claim that has not been compromised and settled or otherwise resolved (a) relating to personal injury, property damage, products liability, wrongful death, or other similar Claims asserted against the Debtors or (b) arising under any federal, state or local statute, rule, regulation or ordinance governing, regulating or relating to health, safety, hazardous substances, or the environment, including, in each case, unasserted and other intangible Claims.

**1.75** ~~1.71~~ Trustee shall have the meaning ascribed to such term in Section 6.5 hereof.

Construction of Certain Terms.

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter. Any term used in the Plan that is not defined shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

**ARTICLE II.**

**TREATMENT AND PAYMENT OF ADMINISTRATIVE
EXPENSE CLAIMS AND PRIORITY TAX CLAIMS**

**2.1** Administrative Expense Claims. Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, each holder of an Allowed Administrative Expense Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Administrative Claim, Cash in an amount equal to such Allowed Claim, on the later of the Effective Date and the date that is ten (10) Business Days after such Administrative Expense Claim becomes an Allowed Administrative Expense Claim pursuant to a Final Order of the Bankruptcy Court, or as soon after such dates as is practicable; provided, however, that Allowed Administrative Expense Claims representing obligations incurred in the ordinary course of business of the Debtors shall be paid by the Disbursing Agent in the ordinary course, consistent with past practice of the Debtors and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions.

**2.2** Professional Compensation and Reimbursement Claims. All Professionals seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement for expenses incurred through and including the Effective Date under sections 503(b) of the Bankruptcy Code shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the date that is 60 days after the Effective Date or such other date as may be fixed by the Bankruptcy Court. If granted

such an award by the Bankruptcy Court, such Professional shall be paid in full in such amounts as are Allowed by the Bankruptcy Court (i) on the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable, or (ii) upon such other terms as may be mutually agreed upon by such holder of an Administrative Expense Claim and the Debtors or the Trustee.

**2.3** Priority Tax Claims. Except to the extent that any governmental unit entitled to payment of any Allowed Priority Tax Claim has previously agreed or agrees to a different treatment by stipulation or otherwise, pursuant to section 1129(a)(9) of the Bankruptcy Code, each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement and release of and in exchange for such Allowed Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax Claim, together with interest at the Case Interest Rate, on the later of the Effective Date, and to the extent such Priority Tax Claim is not an Allowed Claim on the Effective Date, on the first Subsequent Distribution Date following allowance of such Claim.

**ARTICLE III.**

## CLASSIFICATION AND VOTING OF CLAIMS AND EQUITY INTERESTS

Claims and Equity Interests, other than Administrative Expense Claims and Priority Tax Claims, are classified for all purposes, including voting (unless otherwise specified), confirmation and distribution pursuant to the Plan as set forth below.

A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes. A Claim or Equity Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim in that Class and such Claim or Equity Interest has not been paid, released or otherwise satisfied prior to the Effective Date.

| CLASS | STATUS |
| --- | --- |
| Class 1 – Priority Non-Tax Claims | Impaired/Entitled to Vote |
| Class 2 – Other Secured Claims | Impaired/Entitled to Vote |
| Class 3 – Lender Claims | Unimpaired |
| Class 4 – General Unsecured Claims | Impaired/Entitled to Vote |

| Class 5 – Equity Interests | Impaired/Entitled to Vote |
|---|---|
| Class 6 – Securities Litigation Claims | Impaired/Entitled to Vote |

**ARTICLE IV.**

**TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**4.1**     Class 1 – <u>Priority Non-Tax Claims</u>.

**(a)**     <u>Impairment and Voting</u>.  Class 1 is impaired by the Plan.  Each holder of an Allowed Priority Non-Tax Claim is entitled to vote to accept or reject the Plan.

**(b)**     <u>Treatment</u>.  Except to the extent that a holder of an Allowed Priority Non-Tax Claim has been paid by the Debtors prior to the Effective Date or has previously agreed or agrees to a different treatment by stipulation or otherwise, each holder of an Allowed Priority Non-Tax Claim shall receive, in full and complete satisfaction, settlement, and release of and in exchange for such holder's Allowed Priority Non-Tax Claim, Cash in an amount equal to such Allowed Priority Non-Tax Claim, together with interest at the Case Interest Rate, on the later of the Effective Date and, to the extent such Priority Non-Tax Claim is not an Allowed Claim on the Effective Date, on the first Subsequent Distribution Date following allowance of such Claim.

**4.2**     Class 2 – <u>Other Secured Claims</u>.

**(a)**     <u>Impairment and Voting</u>.  Class 2 is impaired by the Plan.  Each holder of an Allowed Other Secured Claim is entitled to vote to accept or reject the Plan.

**(b)**     <u>Treatment</u>.  On the Effective Date, unless a holder of an Allowed Other Secured Claim has been paid by the Debtors prior to the Effective Date or has previously agreed or agrees to a different treatment by stipulation or otherwise, each holder of an Allowed Secured Claim shall receive (i) the amount of the proceeds actually realized from the sale of any Collateral securing such Claim, less the actual costs and expenses of disposing of such Collateral; and/or (ii) the Collateral securing such Claim, but in neither case in an amount greater than necessary to pay such Allowed Secured Claim in full, plus (1) if the Collateral securing such Allowed Secured Claim exceeds the Allowed amount of such Claim, any interest (including post-petition interest at the non-default rate) on such Allowed Secured Claim and any reasonable fees, costs or charges provided for under the governing agreements, to the extent allowed pursuant to section 506(b) of the Bankruptcy Code or (2) if the amount of such Allowed Secured Claim exceeds the value of the Collateral securing such Claim, interest at the Case Interest Rate. To the extent that the amount of an Allowed Secured Claim exceeds the value of the

Collateral securing such Claim that portion of such Claim shall be treated as an unsecured deficiency Claim in Class 4.

(c) <u>Sale of Collateral After Effective Date</u>. The Trustee shall have the right, at any time subsequent to the Effective Date (i) to satisfy in full the obligations owed in respect of an Allowed Secured Claim by conveying to the holder of such Claim all of the right, title and interest in and to the property that is subject to the lien securing such Claim and/or (ii) to sell any property subject to a lien securing such Claim on the terms and subject to the conditions specified in the orders of the Bankruptcy Court and section 363 and the other applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

(d) <u>Retention of Lien</u>. Except as otherwise provided by an order of the Bankruptcy Court and section 363(f) of the Bankruptcy Code, the holder of an Allowed Secured Claim shall retain the lien securing the Claim as of the Confirmation Date until the distributions provided for in Section 4.2(b) have been made to such holder.

(e) <u>Subclasses</u>. Each Secured Claim shall be deemed to be separately classified in a subclass of Class 2 and shall have all rights associated with separate classification under the Bankruptcy Code.

**4.3** Class 3 – <u>Lender Claims</u>.

(a) <u>Impairment and Voting</u>. Class 3 is unimpaired by the Plan. Each holder of an Allowed Lender Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b) <u>Treatment</u>. On the Effective Date, except to the extent that a holder of an Allowed Lender Claim has been paid by the Debtors prior to the Effective Date, each holder of an Allowed Lender Claim shall receive, in full and complete satisfaction, settlement, and release of and in exchange for such holder's Allowed Lender Claim, its proportionate share as provided in the Credit Agreement of Cash in an amount equal to such Lender Claim, together with accrued and unpaid interest, calculated at the non-default rate and any reasonable fees, costs, or charges provided for under the Credit Agreement to the extent allowed pursuant to section 506(b) of the Bankruptcy Code.

**4.4**     Class 4 - <u>General Unsecured Claims</u>.

**(a)**     <u>Impairment and Voting</u>. Class 4 is impaired by the Plan. Each holder of an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

**(b)**     <u>Treatment</u>. Except to the extent that a holder of an Allowed General Unsecured Claim has been paid by the Debtors prior to the Effective Date or has previously agreed or agrees to a different treatment by stipulation or otherwise, each holder of an Allowed General Unsecured Claim shall receive, in full and complete satisfaction, settlement, and release of and in exchange for such holder's Allowed General Unsecured Claim, Cash in an amount equal to such Allowed General Unsecured Claim, together with interest from the Commencement Date through the respective dates on which the Allowed Claims are paid, at the Case Interest Rate, on the later of the Effective Date and, to the extent such General Unsecured Claim is not an Allowed Claim on the Effective Date, on the first Subsequent Distribution Date following allowance of such Claim; <u>provided</u>, <u>however</u>, that interest on lease or executory contract rejection damage Claims shall commence accruing on the date following the effective date of rejection.

**4.5**     Class 5 – <u>Equity Interests</u>.

**(a)**     <u>Impairment and Voting</u>. Class 5 is impaired by the Plan. Each holder of an Allowed Equity Interest is entitled to vote to accept or reject the Plan.

**(b)**     <u>Treatment</u>. On the Effective Date, all Equity Interests shall be canceled and on such date, or as reasonably practical thereafter, the Trustee shall distribute to the holders of Equity Interests their <u>(i)</u> Pro Rata Share of ~~(i)~~ Available Cash, if any, and (ii) <u>proportionate share of</u> Class A Beneficial Interests in the Liquidating Trust <u>equal to their share of Allowed Equity Interests as of the Record Date</u>; <u>provided</u>, <u>however</u>, that any options, warrants, or rights, contractual or otherwise, to acquire an Equity Interest in the Debtors which are not exercised by the Record Date shall be cancelled effective as of that Record Date. After the Effective Date, on each subsequent Available Cash Distribution Date, the Trustee will effectuate distributions to the holders of Equity Interests.

<u>**(c)**</u>     <u>Distributions Upon Litigation Recoveries. In the event of any net recovery from prosecution of contingent and/or unliquidated claims, the Equity Value for purposes of distributions shall be adjusted upward, from time to time, by the amount of the net recovery, and the amounts of the distributions to holders of Class A and Class C Beneficial Interests shall be adjusted so that the total cash previously distributed and to be distributed to such holders shall be determined based on the Equity Value adjusted to include the net recovery, in order to provide holders of Class A and Class C Beneficial Interests total distributions equal to what they would have received if the initial calculation of Equity Value and prior distributions were determined as if the net litigation recovery was taken into account.</u>

**4.6**    Class 6 –<u>Securities Litigation Claims</u>.

(a)    <u>Impairment and Voting</u>. Class 6 is impaired by the Plan. Solely for voting and distribution purposes under the Plan, the class proof of claim filed by the Lead Plaintiffs shall be entitled to vote in the amount of the Class 6 Allocation. The Lead Plaintiffs shall be entitled to vote such class proof of claim to accept or reject the Plan on behalf of all holders of Securities Litigation Claims, other than those holders of Securities Litigation Claims who timely file a motion to temporarily allow their claims for voting purposes pursuant to Bankruptcy Rule 3018(a) which is approved by the Bankruptcy Court.

(b)    <u>Treatment</u>. Securities Litigation Claims shall be subordinated in payment to all other General Unsecured Claims under section 510(b) of the Bankruptcy Code. On the Effective Date, or as soon as reasonably practicable thereafter, the Disbursing Agent will transfer an amount of Cash equal to the Class 6 Allocation (to the extent then available) and the Class B Beneficial ~~Interests~~<u>Interest</u> to the Escrow Agent to effectuate distributions to holders of Allowed <u>Securities Litigation Claims other than the Opt-Out</u> Securities Litigation Claims. The District Court will determine the procedure by which holders of Allowed Class 6 Securities Litigation Claims will receive distributions from the Escrow Agent. Each holder of an Allowed Class 6 Securities Litigation Claim<u>, other than holders of Opt-Out Securities Litigation claims,</u> will receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Class 6 Securities Litigation Claim, its share of the Class 6 Allocation pursuant to a plan of allocation to be approved by the District Court. Each Opt-Out Securities Litigation Claim shall be deemed to be a Disputed Claim and shall not receive a~~a~~<u>ny</u> distribution from the Disbursing Agent under this Plan unless and until the Bankruptcy Court enters a Final Order allowing such Claim for distribution purposes. <u>Opt-Out Securities Litigation Claims shall not receive distributions from the Class 6 Allocation.</u> On each Available Cash Distribution Date, each holder of an Allowed Opt-Out Securities Litigation Claim shall receive, directly or indirectly, its Pro Rata Share ~~(together with holders of Equity Interests and other holders of Allowed Opt-Out Securities Litigation Claims)~~<u>of the Class C Share</u> of Available Cash and/or Class A<u>C</u> Beneficial Interests ~~as determined by the Bankruptcy Court.~~ <u>, subject to any adjustment as required by Section 4.5(c) above.</u>

**ARTICLE V.**

**PROVISIONS REGARDING VOTING
AND DISTRIBUTIONS UNDER THE PLAN**

**5.1**    <u>Voting of Claims</u>. Each holder of an Allowed Claim or Equity Interest in an impaired Class of Claims or Equity Interests that is entitled to vote on the Plan pursuant to Article IV of the Plan, or the holder of a Claim or Equity Interest that has been temporarily Allowed for voting purposes only under Bankruptcy Rule 3018(a), shall be entitled to vote separately to accept or reject the Plan as provided for in such order as is entered by the Bankruptcy Court approving the Disclosure Statement, or any other order or orders of the Bankruptcy Court. For purposes of calculating the number of

Allowed Claims or Equity Interests in a Class that has voted to accept or reject the Plan under section 1126(c) of the Bankruptcy Code, all Allowed Claims or Equity Interests in such Class held by one entity or its "affiliate" (as defined in the Securities Act of 1933 and the rules and regulations promulgated with respect to such Act) shall be aggregated and treated as one Allowed Claim or Equity Interest in such Class; provided, however, that Claims or Equity Interests acquired by an entity from unrelated entities shall not be aggregated for purposes of voting.

**5.2** <u>Enforcement of Statutory Subordination</u>. Securities Litigation Claims shall be subordinated in accordance with section 510(b) of the Bankruptcy Code as reflected in Article IV of the Plan.

**5.3** <u>Nonconsensual Confirmation</u>. If any impaired Class does not accept the Plan by the requisite statutory majorities provided in section 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, the Debtors reserve the right (a) to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code, (b) to reallocate distribution of assets to Claims and Equity Interests if necessary to obtain entry of the Confirmation Order and (c) to amend the Plan in accordance with Article XII of the Plan as necessary to obtain entry of the Confirmation Order.

**5.4** <u>Method of Distributions Under the Plan</u>.

**(a)** <u>Disbursing Agent</u>. Subject to Section 6.5 hereof, all distributions under the Plan shall be made by the Disbursing Agent. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court; and, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtors or the Liquidating Trust, as the case may be. The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (ii) make all distributions contemplated hereby, (iii) upon Bankruptcy Court approval, employ professionals to represent it with respect to its responsibilities and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof. The reasonable fees and reasonable and actual expenses of the Disbursing Agent shall be paid by the Trustee after the Effective Date from the assets of the Liquidating Trust. The Disbursing Agent shall not be obligated to make a distribution of Available Cash pursuant to Sections 4.5 or 4.6 hereof if it is expected that the cost of such distribution would exceed the amount of Available Cash then on hand.

**(b)** <u>Timing of Distributions</u>. Unless otherwise provided herein, any distributions and deliveries to be made hereunder to holders of Allowed Claims, other than Securities Litigation Claims, shall be made on the Effective Date, any distributions and deliveries to holders of Equity Interests shall be made on the Effective Date or as soon thereafter as is practicable, and any distributions and deliveries to holders of

beneficial interests in the Liquidating Trust shall be made in accordance with Section 6.5. The procedures for and timing of distributions from the Escrow Agent to holders of Securities Litigation Claims (other than Opt-Out Securities Litigation ~~Claim~~Claims) will be determined by the District Court. Distributions to holders of Allowed Opt-Out Securities Claims will be made by the Disbursing Agent as soon as reasonably practicable after allowance or disallowance of such Claims, as the case may be. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

(c)     Delivery of Distributions. Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim or Equity Interest shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtors or their agents, or with the registrar or transfer agent with respect to such Equity Interest, unless the Debtors and/or the Trustee, as the case may be, have been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or interest by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder.

(d)     Distributions to Holders of Allowed Claims and Allowed Equity Interests as of the Record Date. On the applicable Record Date, the claims register and equity transfer registers shall be closed, and there shall be no further changes in the record holders of any Claim or Equity Interest except as set forth in this Section 5.4(d). The Disbursing Agent shall have no obligation to recognize any transfer of any Claim or Equity Interest occurring after the Record Date; provided, however, that the Disbursing Agent shall recognize transfers of Class A Beneficial Interests in the Liquidating Trust to the extent they are transferable pursuant to Section 6.5(g) below. ~~The Disbursing Agent shall instead be authorized and entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the claims or equity registers as of the close of business on the applicable Record Date.~~

(e)     Undeliverable and Unclaimed Distributions. If any distribution to a holder of an Allowed Claim or Equity Interest is returned as undeliverable, no further distributions to such holder shall be made unless and until the Disbursing Agent is notified of such holder's then-current address, at which time all missed distributions shall be made as soon as is practicable to such holder, without interest. Checks issued by the Disbursing Agent or Trustee shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for re-issuance of any check shall be made in accordance with the notice provisions of Section 12.12 of the Plan. All claims for undeliverable distributions or voided checks shall be made on or before the earlier of (i) one-hundred twenty (120) days after the date such undeliverable distribution was initially made, or (ii) thirty (30) days before the Final Distribution Date, except that checks issued on the Final Distribution Date shall not be reissued. After the earlier of such dates, all such distributions shall be deemed unclaimed property under section

347(b) of the Bankruptcy Code and shall, in the Trustee's discretion, be used first to satisfy the costs of administering and fully consummating the Plan and administering the estates and thereafter any remaining funds shall become Available Cash for distribution in accordance with the Plan. Such holder shall not be entitled to any other or further distribution under the Plan on account of such Claim or Equity Interest.

**(f)**    <u>Distributions of Cash</u>. Any payment of Cash made by the Disbursing Agent or Trustee pursuant to the Plan may be made at the option of the Disbursing Agent or Trustee, as the case may be, either by check drawn on a domestic bank or by wire transfer.

**(g)**    <u>Withholding and Reporting Requirements</u>. In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim, Allowed Equity Interest or beneficial interest in the Liquidating Trust that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. The Disbursing Agent has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to the Disbursing Agent for payment of any such tax obligations.

**(h)**    <u>Setoffs</u>. The Disbursing Agent may set off against or recoup from any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim (before any distribution is made on account of such Claim), the claims, rights and causes of action of any nature that the Debtors may hold against the holder of such Allowed Claim; <u>provided</u>, <u>however</u>, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Disbursing Agent on behalf of the Debtors or the Debtors in Possession (or any successor thereto), of any such claims, rights and causes of action that the Debtors or the Debtors in Possession (or any successor thereto) may possess against such holder; and <u>provided</u>, <u>further</u>, <u>however</u>, that any claims of the Debtors (or any successor thereto) arising before the Commencement Date shall first be setoff against Claims against the Debtors (or any successor thereto) arising before the Commencement Date.

**5.5**    <u>Tax Treatment of Escrow Agent</u>. All distributions held by the Escrow Agent in escrow for the benefit of the holders of the Securities Litigation Claims shall be treated as held in a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1. <u>The Trustee shall notify the Escrow Agent of such required treatment.</u>

## ARTICLE VI.

## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

**6.1** <u>Substantive Consolidation</u>. The Plan contemplates and is predicated upon substantive consolidation of the Debtors into a single entity solely for purpose of all actions under the Plan. Entry of the Confirmation Order shall constitute approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Chapter 11 Cases for all purposes related to the Plan, including, without limitation, for purposes of voting, confirmation and distribution. On and after the Effective Date, (i) all assets and liabilities of the Debtors shall be deemed merged so that all of the assets of the Debtors shall be available to pay all of the liabilities under the Plan as if it were one company, (ii) no distributions shall be made under the Plan on account of intercompany claims among the Debtors, (iii) no distributions will be made under the Plan on account of Impath's interests in its subsidiaries, (iv) all guarantees of the Debtors of the obligations of any other Debtor shall be deemed eliminated so that any claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of the Debtors shall be deemed to be one obligation of the consolidated Debtors, and (v) each and every Claim filed or to be filed in the Chapter 11 Case of any of the Debtors shall be deemed filed against the consolidated Debtors, and shall be deemed one Claim against and obligation of the consolidated Debtors.

**6.2** <u>Approval of Class Action Settlement</u>. The Plan incorporates and implements the terms and conditions of the Class Action Settlement and constitutes and shall be deemed to be a motion for approval of such settlement by the Bankruptcy Court pursuant to Bankruptcy Rule 9019(a) for purposes of voting on and receiving distributions under the Plan. Upon confirmation of the Plan, (i) the class proof of claim filed by Lead Plaintiffs in the Chapter 11 Cases shall be deemed reduced and Allowed in the amount of the Class 6 Allocation for purposes of distribution, (ii) all other proofs of claim asserting Securities Litigation Claims, other than timely filed Allowed Opt-Out Securities Litigation Claims, shall be disallowed and/or expunged as duplicative of the class proof of claim filed by Lead Plaintiffs; <u>provided</u>, <u>however</u>, that the allowance of the class proof of claim on these terms shall not inure to the benefit of any one individual holder of a Securities Litigation Claim. The Plan shall constitute a motion (i) pursuant to section 502 of the Bankruptcy Code to allow for distribution purposes the class proof of claim filed by Lead Plaintiffs in the amount of the Class 6 Allocation and (ii) pursuant to Rule 3007 of the Bankruptcy Rules, to disallow and expunge all other Securities Litigation Claims (other than Allowed Opt-Out Securities Litigation Claims), including those listed on Exhibit B hereto.

**6.3** <u>Dissolution of the Debtors</u>.

On the Effective Date, except to the extent that the Debtors determine otherwise, each of the Debtors shall be merged with and into one or more of the other Debtors and/or deemed dissolved for all purposes without the necessity for any other or

further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith; provided, however, that each Debtor shall file with the Office of the Secretary of State for the state of its incorporation, a certificate of merger or dissolution which may be executed by an officer of such Debtor without the need for approval by the Board of Directors or shareholders. From and after the Effective Date, the Debtors shall not be required to file any document, or take any other action, or obtain any approval from the Board of Directors or shareholders, to withdraw their business operations from any states in which the Debtors previously conducted their business operations.

**6.4** <u>Accounts</u>. The Debtors and/or the Trustee, as applicable, may establish one or more interest-bearing accounts as they determine may be necessary or appropriate to effectuate the provisions of the Plan, and may invest all or a portion of the Cash, (i) in tax exempt instruments, (ii) as permitted by section 345 of the Bankruptcy Code or (iii) as otherwise authorized by the Bankruptcy Court. All such investments shall be deemed in compliance with section 345 of the Bankruptcy Code, and the Debtors and/or the Trustee, as applicable, shall be relieved from the obligations under section 345(b) of the Bankruptcy Code to obtain a bond from any entity with which the Cash is so deposited or invested.

**6.5** <u>The Liquidating Trust</u>.

**(a)** <u>Establishment of Liquidating Trust</u>. The Debtors shall transfer the Liquidating Trust Assets to the Liquidating Trust on the Effective Date. The holders of Allowed Securities Litigation Claims and Equity Interests entitled to a distribution under the Plan shall receive beneficial interests in the Liquidating Trust entitling them to share in the proceeds of the Liquidating Trust Assets.

**(b)** <u>Execution of Liquidating Trust Agreement</u>. Prior to the Effective Date, the Liquidating Trust Agreement, in a form acceptable to the Debtors and the Trustee and reasonably acceptable to the Equity Committee and the Lead Plaintiffs, shall be executed, and all other necessary steps shall be taken to establish the Liquidating Trust and the beneficial interests therein, which shall be for the benefit of the holders of Allowed Securities Litigation Claims and Equity Interests entitled to a distribution under this Plan. This Section 6.5 sets forth certain of the rights, duties, and obligations of the Trustee. In the event of any conflict between the terms of this Section 6.5 and the terms of the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement shall govern.

**(c)** <u>Purpose of Liquidating Trust</u>. The Liquidating Trust shall be established for the purpose of liquidating and distributing its assets and for prosecuting certain of the Debtors' claims and causes of action, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

**(d)** Liquidating Trust Assets. The Liquidating Trust shall consist of the Liquidating Trust Assets. On the Effective Date, the Debtors shall transfer and deliver all the Liquidating Trust Assets to the Liquidating Trust, subject to (i) any and all claims (excluding Securities Litigation Claims, but including Opt-Out Securities Litigation Claims) provided for in Articles II and IV hereof that have not been paid as of the Effective Date and (ii) any expenses incurred and unpaid by the Debtors in respect of, among other things, consummation of the Plan and winding up of their estates. In addition, all bank accounts established by the Debtors to fund Claims and Equity Interests receiving payments under the Plan shall be held by the Trustee in the name of the Liquidating Trust subject to the provisions of the Plan. The Debtors also shall transfer and deliver to the Trustee all books, records, and other documents, including computer files and other electronic media, necessary or desirable for the Liquidating Trustee's administration of the Liquidating Trust and the completion of the wind-up of the Debtors' affairs.

**(e)** The Trustee. Anthony H.N. Schnelling of Bridge Associates, LLC shall be the initial Trustee effective as of the Effective Date.

**(f)** Duties of the Trustee.

(i) In furtherance of and consistent with the purpose of the Liquidating Trust and the Plan, the Trustee shall have the power, authority, standing, and duty to (A) hold, manage, sell, and distribute the Liquidating Trust Assets to the holders of Allowed Claims and Equity Interests in accordance with the Plan, (B) prosecute and resolve, in the names of the Debtors and/or the name of the Trustee, the Debtors' interests in all claims and causes of action, including without limitation the Debtors' claims against their former auditors relating to the alleged accounting issues that are the subject of the Securities Litigation Claims, (C) prosecute and resolve objections to Disputed Claims, (D) perform all of the obligations and functions of the Debtors and/or the Trustee under the Plan and applicable law, and (E) administer the closure of the Chapter 11 Cases. The Trustee shall also be responsible for all decisions and duties with respect to the Liquidating Trust and the Liquidating Trust Assets. In all circumstances, the Trustee shall act in the best interests of all beneficiaries of the Liquidating Trust and in furtherance of the purpose of the Liquidating Trust. The Trustee shall consult with Lead Plaintiffs and their counsel in connection with the prosecution or settlement of contingent and/or unliquidated claims held by the Debtors and/or the holders of Securities Litigation Claims arising from or relating to the accounting irregularities that are the subject of the Securities Class Action Lawsuit that are not released pursuant to the Plan or the Class Action Settlement. In addition, in accordance with the Settlement Agreement, at the option of the Trustee in his sole discretion, the Trustee shall be deemed to be the assignee of all of the rights and interests of the holders of Securities Litigation Claims with respect to claims arising from or relating to the alleged accounting issues that are the subject of the Securities Litigation Claims that are not released pursuant to the Plan or the Class Action Settlement, with the exclusive power, authority, and standing to prosecute and settle such claims for the benefit of the Liquidating Trust.

(ii)     As of the Effective Date, the Trustee shall be authorized and directed to exercise all powers regarding the Debtors' tax matters, including filing tax returns, to the same extent as if the Trustee were the debtor in possession. The Trustee shall (A) complete and file within the applicable time periods proscribed by law, to the extent not previously filed, the Debtors' final federal, state, and local tax returns, (B) request an expedited determination of any unpaid tax liability of the Debtors under section 505(b) of the Bankruptcy Code for all tax periods of the Debtors ending after the Commencement Date through the liquidation of the Debtors as determined under applicable tax laws, to the extent not previously requested, and (C) represent the interest and account of the Debtors before any taxing authority in all matters, including, but not limited to, any action, suit, proceeding, or audit.

(g)     Transferability of Liquidating Trust Interests.  The ~~beneficial interests~~Class A Beneficial Interests in the Liquidating Trust shall be certificated and shall be transferable only if ~~the Trustee seeks and obtains~~ relief is obtained from the Securities and Exchange Commission in connection with the reporting requirements of the Liquidating Trust under the Securities Exchange Act of 1934, as amended, ~~and~~ in a manner acceptable to the Trustee in his discretion.  In the absence of such relief, ~~such~~no beneficial ~~interests~~interest shall ~~not~~ be certificated ~~and shall not be~~or transferable (except as otherwise provided in the Liquidating Trust Agreement).

(h)     Cash.  The Trustee may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code; provided, however, that such investments are investments that are not prohibited to be made by a liquidating trust under Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

(i)     Compensation of the Trustee.  The Trustee shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy proceedings.  The costs and expenses of the Liquidating Trust, including the fees and expenses of the Trustee and his retained professionals shall be paid out of the Liquidating Trust Assets.  Such costs and expenses shall be considered administrative expenses of the Debtors' estates.

(j)     Distribution of Liquidating Trust Assets.  The Trustee shall distribute from the Liquidating Trust at least annually and in accordance with the Liquidating Trust Agreement (with an initial distribution as soon after the Effective Date as is practicable) to each holder of a beneficial interest in the Liquidating Trust, such holder's respective share of ~~Available~~ Cash on hand (including any Cash received from the Debtors on the Effective Date, treating as Cash for purposes of this Section 6.5 any permitted investments under Section 6.5(h) hereof); provided, however, that the Trustee shall not be obligated to make a distribution if it is expected that the cost of such distribution would exceed the amount of Available Cash; and provided, further, however, that prior to making any distribution to holders of beneficial interests in the Liquidating Trust, the Trustee shall retain such amounts (i) as would be distributable to a holder of a

Disputed Claim if such Disputed Claim had been Allowed prior to the time of such distribution (but only until such Claim is resolved), (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (iii) to pay reasonable expenses (including, but not limited to, any taxes imposed on the Liquidating Trust or in respect of the Liquidating Trust Assets), (iv) to pay anticipated attorneys' fees and other costs of litigation with respect to the Trustee's prosecution of claims and other proceedings, and (v) to satisfy other liabilities incurred by the Liquidating Trust in accordance with this Plan or the Liquidating Trust Agreement.

      **(k)**     <u>Retention of Professionals by the Trustee</u>. The Trustee may retain and reasonably compensate counsel and other professionals to assist in his duties as Trustee on such terms as the Trustee deems appropriate without Bankruptcy Court approval. The Trustee may retain any professional who represented parties in interest in the Chapter 11 Cases.

      **(l)**     <u>Income Tax Treatment of Liquidating Trust</u>.

      (i)     <u>Liquidating Trust Assets Treated as Owned by Creditors</u>. For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Trustee, and the holders of Allowed Claims and Equity Interests) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust for the benefit of the holders of Allowed Securities Litigation Claims and Equity Interests, whether Allowed on or after the Effective Date, as (A) a transfer of the Liquidating Trust Assets directly to the holders of <u>Equity Interests and Opt-Out Securities Litigation Claims and to the Escrow Agent, on behalf of all other holders of</u> Allowed Securities Litigation Claims (or the Escrow Agent, if treated as a "qualified settlement fund," within the meaning of Treasury Regulation § 1.468B-1) and Equity Interests, in satisfaction of such Claims and Equity Interests (other than to the extent allocable to Disputed Claims), followed by (B) the transfer by such holders to the Liquidating Trust of the Liquidating Trust Assets in exchange for beneficial interests in the Liquidating Trust. Accordingly, the holders of such Claims (or the Escrow Agent, if treated as a qualified settlement fund) and Equity Interests <u>and the escrow established for the benefit of holders of Securities Litigation Claims (*see* Section 5.5 hereof)</u> shall be treated for federal income tax purposes as the grantors and owners of their respective shares of the Liquidating Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

      (ii)     <u>Tax Reporting</u>.

      (1)     The Trustee shall file returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 6.5(l). The Trustee shall also annually send to each record holder of a beneficial interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction, or credit and will instruct all such holders to report such items on their federal income tax returns or to forward the appropriate information to the

beneficial holders with instructions to report such items on their federal income tax returns. The Liquidating Trust's taxable income, gain, loss, deduction, or credit will be allocated (subject to Sections 6.5(l)(ii)(3)and (4) hereof) to the holders of Class A, Class B, and ~~B~~Class C Beneficial Interests in accordance with their relative beneficial interests in the Liquidating Trust.

(2)     As soon as possible after the Effective Date, the Trustee shall make a good faith valuation of the Liquidating Trust Assets. Such valuation shall be made available from time to time, to the extent relevant, and used consistently by all parties (including, without limitation, the Debtors, the Trustee, the Escrow Agent and the holders of Class A ~~and~~, Class B, and Class C Beneficial Interests) for all income tax purposes. The Trustee shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any governmental unit.

(3)     Allocation of Liquidating Trust income or loss to the holders of Class A ~~Beneficial Interests,~~ Class B, and Class ~~B~~C Beneficial Interests shall be determined with reference to their respective economic interests in the underlying assets of the Liquidating Trust and the income earned therefrom (as reasonably determined by the Trustee). The income or loss allocated to a class of beneficial interests shall be allocated among the beneficial interests in that Class on a pro-rata basis (subject to Section 6.5(l)(ii)(4) of the Plan in respect of Opt-Out Securities Litigation Claims). In addition, tax accounting principles prescribed by the Internal Revenue Code of 1986, as amended ("Tax Code"), the applicable tax regulations, and other applicable administrative and judicial authorities and pronouncements shall also apply to the allocation of any income or loss to the Class A ~~Beneficial Interests,~~ Class B, and Class ~~B~~C Beneficial Interests.

(4)     Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Trustee of a private letter ruling if the Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Trustee), the Trustee shall:

(i)     treat any Liquidating Trust Assets allocable to, or retained on account of, Opt-Out Securities Litigation Claims as held by a discrete trust for federal income tax purposes (the "Liquidating Trust Claims Reserve"), consisting of separate and independent shares to be established in respect of each Opt-Out Securities Litigation Claim, in accordance with the trust provisions of the Tax Code (section 641 *et seq.*~~;~~) (it being understood that the Trustee shall not be required to actually segregate such assets);

(ii)     treat as taxable income or loss of the Liquidating Trust Claims Reserve with respect to any given taxable year, the portion of the taxable income or loss of the Liquidating Trust that would have been allocated to the holders of Opt-Out Securities Litigation Claims had such Claims been Allowed on the

Effective Date (but only for the portion of the taxable year with respect to which such Claims are unresolved);

(iii)    treat as a distribution from the Liquidating Trust Claims Reserve any increased amounts distributed by the Liquidating Trust as a result of any Opt-Out Securities Litigation Claims resolved earlier in the taxable year, to the extent such distributions relate to taxable income or loss of the Liquidating Trust Claims Reserve determined in accordance with the provisions hereof (reduced as provided in Section 6.5(l)(ii)(5), below, for any income taxes paid by the Liquidating Trust with respect to the taxable income accumulated on behalf of such Claims);

(iv) and to the extent permitted by applicable law, report consistent with the foregoing for state and local income tax purposes;

unless the Trustee determines that the Liquidating Trust Claims Reserve is held in a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1, in which case the Trustee shall treat the Liquidating Trust Claims Reserve consistent therewith.  All holders of Claims shall report, for tax purposes, consistent with the foregoing.

(5)    The Trustee shall be responsible for payments, out of the Liquidating Trust Assets, of any taxes imposed on the Liquidating Trust or the Liquidating Trust Assets, including the Liquidating Trust Claims Reserve.  In the event, and to the extent, any Cash retained on account of Opt-Out Securities Litigation Claims in the Liquidating Trust Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Opt-Out Securities Litigation Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Opt-Out Securities Litigation Claims, or (ii) to the extent such Opt-Out Securities Litigation Claims have subsequently been resolved, deducted from any amounts distributable by the Trustee as a result of the resolutions of such Opt-Out Securities Litigation Claims.

(6)    The Trustee may request an expedited determination of taxes of the Liquidating Trust, including the Liquidating Trust Claims Reserve, under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

(m)    Dissolution. The Trustee and the Liquidating Trust shall be discharged or dissolved, as the case may be, at such time as (i) all Disputed Claims have been resolved, (ii) all Liquidating Trust Assets have been liquidated, and (iii) all distributions required to be made by the Trustee under the Plan have been made, but in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six (6) month period prior to the fifth (5th) anniversary of the Effective Date (and, in the case of any extension, within six (6) months prior to the end of such extension), determines that a fixed period

extension is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets and winding up of the Debtors' affairs.

**(n)** <u>Indemnification of Trustee</u>. The Trustee and his agents and professionals shall not be liable for actions taken or omitted in his capacity as, or on behalf of, the Trustee, except those acts arising out of his or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or <u>ultra vires</u> acts, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of his actions or inactions in his capacity as, or on behalf of, the Trustee, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or <u>ultra vires</u> acts. Any indemnification claim of the Trustee (and the other parties entitled to indemnification under this subsection (n)) shall be satisfied from the Liquidating Trust Assets and any insurance coverages procured by the Trustee on behalf of the Liquidating Trust. The Trustee shall be entitled to rely, in good faith, on the advice of his retained professionals.

**(o)** <u>Closing of Chapter 11 Cases</u>. When all Disputed Claims filed against the Debtors have become Allowed Claims or have been disallowed by Final Order, and all of the Liquidating Trust Assets have been distributed in accordance with the Plan, the Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**(p)** <u>Closing of Chapter 11 Cases by Charitable Gift</u>. If at any time the Trustee determines, in reliance upon such professionals as the Trustee may retain, that the expense of administering the Liquidating Trust so as to make a final distribution to its beneficiaries is likely to exceed the value of the assets remaining in the Liquidating Trust, the Trustee shall apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to close the Chapter 11 Cases, (ii) donate any balance to a charitable organization exempt from federal income tax under section 501(c)(3) of the Tax Code that is unrelated to IMPATH, Inc., the Liquidating Trust, and any insider of the Trustee, and (iii) close the Chapter 11 Cases in accordance with the Bankruptcy Code and Bankruptcy Rules. Notice of such application shall be given electronically, to the extent practicable, to those parties who have filed requests for notices and whose electronic addresses remain current and operating.

**6.6** <u>Securities Exempt</u>. The issuance of the beneficial interests in the Liquidating Trust satisfies the requirements of section 1145 of the Bankruptcy Code and, therefore, such issuance is exempt from registration under the Securities Act of 1933, as amended, and any state or local law requiring registration.

**6.7** <u>Cancellation of Securities</u>. Except for purposes of evidencing a right to distributions under the Plan or otherwise provided herein, on the Effective Date (i) the Common Stock, to the extent not already cancelled, shall be cancelled, and (ii) the obligations of the Debtors under the Common Stock and under the Debtors' certificate of incorporation, any agreements or certificates of designations governing the Common Stock shall be extinguished; <u>provided, however</u>, that each agreement that governs the

rights of the holder of an Equity Interest based on the Common Stock and that is administered by an agent or servicer shall continue in effect solely for the purposes of (a) allowing such agent or servicer to make the distributions to be made on account of such Equity Interests under the Plan as provided in Article IV hereof and (b) permitting such agent or servicer to maintain any rights it may have for fees, costs, and expenses under such other agreement. Any actions taken by an agent or servicer that are not for the purposes authorized by this Article or the Plan shall not be binding upon the Debtors. Notwithstanding the foregoing, the Debtors may terminate any governing agreement and the authority of any agent or servicer to act thereunder at any time, with or without cause, by giving five (5) days' written notice of termination to the agent or servicer. If distributions under the Plan have not been completed at the time of termination of the governing agreement, the Debtors shall designate either the Disbursing Agent, the Trustee, or some other agent to act in the place of the terminated agent or servicer, and the provisions of this Section 6.7 shall be deemed to apply to the new distribution agent.

### ARTICLE VII.

### <u>PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS</u>

**7.1**    <u>No Distributions Pending Allowance</u>.

**(a)**    <u>General</u>. Notwithstanding any other provision hereof and unless otherwise determined by the Debtors or the Trustee, as the case may be, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on any portion of such Claim unless and until such Disputed Claim becomes an Allowed Claim (other than the transfer of the Liquidating Trust Assets to the Liquidating Trust). Until such time, with respect to Disputed Claims, the Trustee shall withhold from the property to be distributed to holders of beneficial interests in the Liquidating Trust the portion of such property allocable to Disputed Claims.

**(b)**    <u>Tort Claims</u>. All Tort Claims are Disputed Claims. Any Tort Claim as to which a proof of claim was timely filed in the Chapter 11 Cases shall, at the option of the Debtors or the Trustee, as the case may be, either be estimated or determined and liquidated in the Bankruptcy Court or in the administrative or judicial tribunal in which it is pending on the Confirmation Date or, if no such action was pending on the Confirmation Date, in any administrative or judicial tribunal of appropriate jurisdiction. Any Tort Claim estimated or determined and liquidated pursuant to a judgment obtained in accordance with this Section 7.1(b) and applicable non-bankruptcy law that is no longer subject to appeal or other review shall be deemed to be an Allowed Claim in Class 4 in such liquidated amount and satisfied in accordance with the Plan. Nothing contained in this Section 7.1(b) shall constitute or be deemed a waiver of any claim, right, or cause of action that the Debtors or the Trustee, as the case may be, may have against any person in connection with or arising out of any Tort Claim, including, without limitation, any rights under section 157(b) of title 28 of the United States Code.

**7.2** <u>Resolution of Disputed Claims</u>. After the Effective Date, the Trustee shall have the authority to compromise, settle, otherwise resolve or withdraw any objections to Claims and compromise, settle or otherwise resolve Disputed Claims without approval of the Bankruptcy Court. Unless otherwise ordered by the Bankruptcy Court, the Trustee shall make and file all objections to Disputed Claims that are the subject of proofs of claim or requests for payment filed with the Bankruptcy Court (other than applications for allowances of compensation and reimbursement of expenses under sections 330 and 503 of the Bankruptcy Code) and serve such objections upon the holders of the Claims to which the objections are made as soon as practicable, but in no event later than 120 days after the Effective Date or such later date as may be approved by the Court.

**7.3** <u>Estimation of Claims</u>. The Debtors or the Trustee, as the case may be, may, at any time, request the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors have previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during litigation concerning any objection to such Claim. In the event the Bankruptcy Court estimates any Disputed Claim, that estimated amount may constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. On and after the Effective Date, Claims which have been estimated may be compromised, settled, withdrawn or otherwise resolved, without further order of the Bankruptcy Court as provided for in Section 7.2 of the Plan.

**7.4** <u>Amounts Retained to Pay Disputed Claims and Allowed Opt-Out Securities Litigation Claims</u>. On and after the Effective Date, the Trustee shall retain an amount of Cash and/or Class A Beneficial Interests, pending the allowance or disallowance of any Disputed Claims (including Opt-Out Securities Litigation Claims), sufficient to pay to each holder of a Disputed Claim (i) the amount that such holder would have been entitled to receive under the Plan if such Claim had been an Allowed Claim on the Effective Date or any Subsequent Distribution Date, or (ii) such lesser amount as the Bankruptcy Court may estimate pursuant to section 502(c) of the Bankruptcy Code and Section 7.3 of the Plan. Prior to the Effective Date, the Bankruptcy Court shall determine the amount of Cash and/or Class A Beneficial Interests to be retained by the Trustee on account of all Opt-Out Securities Litigation Claims pending their allowance or disallowance by the Bankruptcy Court. The Trustee shall withhold from the property to be distributed to holders of beneficial interests in the Liquidating Trust the portion of such property allocable to Opt-Out Securities Litigation Claims. If any Claims are disallowed, the Liquidating Trust Assets withheld shall be released as and to the extent the Trustee determines such property is no longer necessary to fund unresolved Disputed Claims, and such Liquidating Trust Assets shall <u>become part of Available Cash to</u> be distributed <s>in accordance with Section 6.5 hereof</s><u>to holders of Class A and Class C Beneficial Interests</u>.

**7.5**    Allowance of Disputed Claims.  If, on or after the Effective Date, any Disputed Claim, or portion thereof, becomes an Allowed Claim, the Disbursing Agent shall, on the Subsequent Distribution Date that is at least ten (10) Business Days following the date on which the Disputed Claim becomes an Allowed Claim, distribute to the holder of such Allowed Claim the amount that such holder would have received pursuant to Article IV of the Plan on the Effective Date and each Subsequent Distribution Date had the Disputed Claim been an Allowed Claim on such dates, which amount shall not exceed the amount of Cash reserved on account of such Claim.

**7.6**    No Distribution in Respect of Disallowed Claims.  To the extent that all or a portion of a Disputed Claim is disallowed, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is disallowed.

## ARTICLE VIII.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1**    Executory Contracts and Unexpired Leases.  On the Confirmation Date, all executory contracts and unexpired leases that exist between the Debtors and any person shall be deemed rejected as of the Effective Date, except for any executory contract or unexpired lease (a) that has been assumed or rejected pursuant to an order of the Bankruptcy Court entered prior to the Confirmation Date, or (b) as to which a motion for approval of the assumption or rejection of such contract or lease has been filed and served prior to the Confirmation Date, provided, however, that any options, warrants, or rights, contractual or otherwise, to acquire an Equity Interest in the Debtors which are not exercised by the Record Date shall be cancelled effective as of the Record Date.

**8.2**    Approval of Rejection of Executory Contracts and Unexpired Leases. Entry of the Confirmation Order shall constitute the approval, pursuant to section 365(a) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to Section 8.1 of the Plan.

**8.3**    Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.  Claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Bankruptcy Court no later than twenty (20) days after the Confirmation Date.  Any Claims not filed within such time period will be forever barred from receiving a distribution from the Debtors' bankruptcy estates or from the Liquidating Trust.

**8.4**    Retiree Benefits.  The Debtors have never funded nor maintained any retiree benefit plans, funds or programs, as defined in section 1114 of the Bankruptcy Code, for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise).  Accordingly, no such payments will be, or are required to be, made pursuant to section 1129(a)(13) of the Bankruptcy Code.

**8.5** Indemnification and Reimbursement Obligations. Any indemnification obligations of the Debtors pursuant to corporate charters, by-laws or other agreements to those directors, officers, or employees who served in such capacity on or after the Commencement Date shall be assumed by the Debtors on the Effective Date provided, however, that, notwithstanding the foregoing, such obligations shall not be extended to any directors or officers whose term in all such capacities expired or was terminated prior to October 1, 2003. Any other prepetition indemnification obligations shall be limited to the reimbursement of directors, officers, and/or employees, other than Culpable Individuals, for legal fees and expenses and shall be assumed under and survive confirmation of the Plan in a total amount not to exceed $300,000 for fees and expenses incurred as of the date of the Settlement Agreement and $1,000,000 for fees and expenses incurred thereafter payable solely from the Indemnity Reserve, in the aggregate for all directors, officers, and/or employees. Funds from such Indemnity Reserve will be paid to eligible directors, officers, and/or employees pursuant to the terms of the Settlement Agreement. In addition, during any governmental investigation or judicial proceeding to determine whether present or former officers, directors or employees are Culpable Individuals, each present or former officer, director or employee, named as a defendant in the Securities Class Action Lawsuit, (i) is entitled, upon application to the Debtors or the Trustee, as the case may be, to be reimbursed, in an amount up to $200,000, for legal fees and expenses incurred in connection with the above proceedings and investigations, and thereafter, (ii) may, by application to and approval of the District Court, request reimbursement for legal fees and expenses incurred in connection with such proceedings and investigations, in excess of $200,000; provided, however, that the total amount of all Indemnification and Reimbursement Claims incurred after the date of the Settlement Agreement and paid from the Indemnity Reserve pursuant to the terms set forth herein, does not exceed $1,000,000 in the aggregate for all directors, officers, and/or employees. By accepting a distribution under this Section 8.5, any officer, director or employee who served in such capacity at any time prior to or after the Commencement Date will be deemed to have waived any and all Claims against the Debtors that meet the requirements of section 502(e)(1)(B) of the Bankruptcy Code. To the extent that the aggregate amount of all Indemnification and Reimbursement Claims paid by the Debtors or the Trustee pursuant to the terms set forth herein, is less than the Indemnity Reserve, 40% of the difference shall be distributed to holders of Allowed Securities Litigation Claims and 60% of the difference shall be distributed to holders of Allowed Equity Interests. Other than as set forth in the preceding sentence, nothing herein shall be deemed to be an assumption of any other prepetition indemnification obligation and any such obligations shall be rejected pursuant to the Plan.

**ARTICLE IX.**

**EFFECT OF CONFIRMATION OF PLAN**

**9.1** Term of Injunctions or Stays. Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain

in full force and effect until the close of the Chapter 11 Cases. Accordingly, by reason of the continuation of the automatic stay, no person may transfer any stock of Impath, or any other interest in each Debtor that would be considered "stock" within the meaning of section 382 of the Internal Revenue Code of 1986, as amended, if such transfer would result in the imposition of limitations on the Debtors' or the Liquidating Trust's ability to utilize any net operating loss carryforwards thereafter.

**9.2** Revesting of Assets. On and after the Effective Date, the Trustee may, without further approval of the Bankruptcy Court, use, sell, assign, transfer, abandon, settle, or otherwise dispose of at a public or private sale any of the Debtors' remaining assets for the purpose of liquidating and converting such assets to Cash, making distributions and fully consummating the Plan. In accordance with Section 6.5 hereof and subject to the exceptions contained therein, (i) the Liquidating Trust Assets shall be transferred to the Liquidating Trust, (ii) from and after the Effective Date, the Trustee may dispose of the assets of the Liquidating Trust free of any restrictions of the Bankruptcy Code, but in accordance with the provisions of the Plan and the Liquidating Trust Agreement, and (iii) as of the Effective Date, all assets of the Debtors and the Liquidating Trust shall be free and clear of all Claims, except as provided in the Plan or the Confirmation Order.

**9.3** Preservation of Certain Causes of Action. Except as otherwise provided in Sections 9.4 and 9.5 of the Plan, on and after the Effective Date, any and all claims or causes of action accruing to the Debtors and Debtors in Possession, including, without limitation, claims against the Debtors' former auditors, shall be preserved and retained by the Liquidating Trust and the Trustee, who shall have the exclusive right and standing to enforce any such causes of action. The Trustee may pursue, abandon, settle or release any or all such rights of action upon Bankruptcy Court approval after notice and a hearing.

**9.4** Certain Causes of Action Released and Extinguished.

**(a)** Derivative Claims. As of the Effective Date, any and all claims and causes of action accruing to the Debtors against their directors and officers shall be extinguished and released, whether or not then pending.

**(b)** Avoidance Claims. From and after the Confirmation Date, any and all rights, claims, causes of action, avoiding powers, suits and proceedings arising under sections 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code shall be preserved and shall be included in the Liquidating Trust Assets.

**9.5** Release of Directors, Officers and Employees. As of the Effective Date, the Debtors shall be deemed to have waived and released their present and former directors, officers, and employees from any and all claims of the Debtors, including, without limitation, claims which the Debtors or Debtors in Possession otherwise have legal power to assert, compromise or settle in connection with the Chapter 11 Cases, arising on or prior to the Effective Date. The release provided hereunder shall be without

prejudice to, and shall not affect, the Debtors' claims against any other parties. In addition, any holder of an Allowed Securities Litigation Claim or an Allowed Opt-Out Securities Litigation Claim accepting any distribution pursuant to the Class Action Settlement or the Plan shall be presumed conclusively to have released the Debtors, their present and former directors, officers and employees (collectively, the "Released Parties"), from any and all actions, causes of action, liabilities, obligations, rights, suits, accounts, covenants, contracts, agreements, promises, damages, judgments, claims, debts, remedies and demands whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the commencement of the Chapter 11 Cases or during the course of the Chapter 11 Cases (including through the Effective Date), including but not limited to, acts or omissions with respect to the Debtors, the Chapter 11 Cases, the Plan, negotiations regarding or concerning the Plan, and the ownership, management, and operation of the Debtors, that the Debtors or Reorganized Debtors, their stockholders and/or creditors would have been legally entitled to assert in their own right (whether individually or collectively) or that any holder of a Securities Litigation Claim would have been legally entitled to assert on behalf of itself, the Debtors or their estates (the "Released Claim"). Such holders of Securities Litigation Claims, along with their respective principals, shareholders, employees, agents, representatives, officers, directors, members, partners, professionals, successors and assigns, and any person claimed to be liable derivatively through any of the foregoing, shall be permanently enjoined from and after the Effective Date from directly or indirectly commencing or continuing, in any manner, a judicial, administrative, or other action or proceeding against the Released Parties or enforcing against the Released Parties a judgment obtained on account of or in respect of the Released Claims.

**9.6**   Exculpation.  Neither the Debtors, the Trustee, the Lenders, the DIP Lenders, the Creditors Committee, the Equity Committee, the Lead Plaintiffs, nor any of their respective directors, officers, employees, members, attorneys, consultants, advisors and agents (acting in such capacity), shall have or incur any liability to any entity for any act taken or omitted to be taken in the formulation, preparation, dissemination, implementation, confirmation or approval of the Plan, the Disclosure Statement related thereto or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; provided, however, that the provisions of this Section 9.6 shall not affect the liability of any entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence, willful misconduct or breach of fiduciary duty.  Any of the foregoing parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

**9.7**   Injunction.  Pursuant to sections 105 and 1141 of the Bankruptcy Code, on and after the Confirmation Date, all persons are permanently enjoined from commencing or continuing in any manner:

   **(a)**   any action or proceeding (whether directly, indirectly, derivatively or otherwise) on account of or respecting any claim, debt, right or cause of action of the Debtors and Debtors in Possession (i) for which the Debtors, the Debtors in Possession, or the Liquidating Trust retain sole and exclusive authority to pursue in accordance with the Plan or (ii) which has been released or extinguished pursuant to Sections 8.5, 9.4, or 9.5 of the Plan; and

   **(b)**   any suit, action or other proceeding against the D&O Insurers, based upon or with respect to (i) any and all claims arising out of any action or alleged breach of fiduciary duty, neglect, error, misstatement, misleading statement, omission or act by the Debtors and/or its directors, officers, and employees, and (ii) National Union Executive Organization Liability Insurance Policy No. 382-61-89, ACE Policy No. DOXG 21657827001, and Travelers Policy No. 103307250.

### ARTICLE X.

### EFFECTIVENESS OF THE PLAN

**10.1**   Conditions Precedent to the Effective Date.  The following are conditions precedent to the Effective Date of the Plan:

   **(a)**   The Bankruptcy Court shall have entered the Confirmation Order which shall be in form and substance satisfactory to the Debtors;

   **(b)**   No stay of the Confirmation Order shall then be in effect at the time the other conditions set forth in this Section 10.1 are satisfied or waived;

   **(c)**   All documents, instruments and agreements, in form and substance satisfactory to the Debtors, provided for under or necessary to implement the Plan, including the Liquidating Trust Agreement, shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby;

   **(d)**   The Settlement Agreement shall be in full force and effect, and all conditions precedent thereto shall have been satisfied; and

   **(e)**   The Class Action Settlement shall have been approved by the District Court by Final Order.

**ARTICLE XI.**

## <u>RETENTION OF JURISDICTION</u>

The Bankruptcy Court shall retain jurisdiction of all matters arising under, arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)     To hear and determine any motions for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases, and the allowance of any Claims resulting therefrom;

(b)     To determine any and all adversary proceedings, applications, and contested matters that have been or may be commenced.

(c)     To hear and determine any objection to, or request to estimate, any Claims (including Opt-Out Securities Litigation Claims) or Equity Interests;

(d)     To hear and determine any disputes relating to distributions of Available Cash or implementation of the Class Action Settlement;

(e)     To hear and determine the allowance or disallowance of Opt-Out Securities Litigation Claims;

(f)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(g)     To issue such orders in aid of execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code;

(h)     To consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i)     To hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331, and 503(b) of the Bankruptcy Code;

(j)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan;

(k)     To recover all assets of the Debtors and property of the Debtors' estates, wherever located;

(l)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Liquidating Trust or the Liquidating Trust Agreement;

(m)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code filed, or to be filed, with respect to tax returns for any and all taxable periods of the Debtors, the Liquidating Trust or the Liquidating Trust Claims Reserve ending after the Commencement Date);

(n)     To hear any other matter consistent with the provisions of the Bankruptcy Code;

(o)     To release and discharge the Disbursing Agent;

(p)     To hear and determine the Debtors' claims on account of contingent and/or unliquidated claims arising from or relating to the accounting irregularities that are the subject of the Securities Class Action Lawsuit that are not released pursuant to this Plan or the Class Action Settlement or to approve any compromise and settlement thereof; and

(q)     To enter a final decree closing the Chapter 11 Cases.

### ARTICLE XII.

## MISCELLANEOUS PROVISIONS

**12.1** <u>Dissolution of the Creditors Committee and Equity Committee</u>. On the Effective Date, and in the case of the Equity Committee, after the establishment of the Liquidating Trust, the Creditors Committee and the Equity Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases, and the retention or employment of its attorneys, accountants, and other agents, shall terminate. The Creditors Committee and the Equity Committee shall continue to exist after such date solely with respect to (i) all applications filed pursuant to sections 330 and 331 of the Bankruptcy Code seeking payment of fees and expenses incurred by any professional and (ii) any post-confirmation modifications to, or motions or other actions seeking the enforcement or implementation of the provisions of the Plan or the Confirmation Order.

**12.2** <u>Termination of Audit Committee</u>. On the Effective Date and dissolution of Impath Inc., the Audit Committee of Impath Inc., and its professionals, shall be terminated and its members released and discharged of and from any further authority, duties, responsibilities or obligations relating to or arising from and in connection with the Chapter 11 Cases. At the Trustee's request, the Audit Committee and its

professionals shall deliver to the Trustee all reports, documents and other materials relating to the Audit Committee's investigation.

**12.3** <u>Effectuating Documents and Further Transactions</u>. Upon entry of the Confirmation Order, each of the Debtors and the Trustee shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**12.4** <u>Corporate Action</u>. On the Effective Date, all matters provided for under the Plan, or that are contemplated by the Plan (including the liquidation of the remaining assets of the Debtors' estates) that would otherwise require approval of the stockholders or directors shall be deemed to have occurred (without having to have obtained such approval) and shall be in effect from and after the Effective Date pursuant to the applicable general corporation law of the states in which the Debtors are incorporated, without any requirement of action by the stockholders or further action by the directors of the Debtors.

**12.5** <u>Exemption from Transfer Taxes</u>. Pursuant to section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan (whether by the Debtors or the Liquidating Trust), including any deeds, bills of sale or assignments executed in connection with any disposition of assets under, in furtherance of, or in connection with the Plan (including transfers of assets to and by the Liquidating Trust) shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.

**12.6** <u>Post-Effective Date Fees and Expenses</u>. From and after the Effective Date, the Trustee shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons thereafter employed by the Debtors, the Creditors Committee, the Equity Committee, or the Liquidating Trust incurred in connection with the implementation and consummation of the Plan, the reconciliation of Claims and Equity Interests, the prosecution of causes of action belonging to the Debtors, or any other matters as to which such professionals are employed. The fees and expenses of such professionals shall be paid by the Trustee within ten (10) Business Days after submission to the Trustee of an invoice therefor, except to the extent the invoice is disputed. If the Trustee disputes the reasonableness of any such invoice, the Trustee shall timely pay the undisputed portion of such invoice, and the Trustee or the affected professionals may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of such invoice. The fees and expenses of the Trustee shall be paid in accordance with Section 6.5 hereof.

**12.7** <u>Request for Expedited Determination of Taxes</u>. The Debtors or the Trustee shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all

taxable periods ending after the Commencement Date through, and including, the dissolution of the Debtors.

**12.8** <u>Payment of Statutory Fees</u>. All fees payable pursuant to Chapter 123 of title 28, United States Code, as determined by the Bankruptcy Court on the Effective Date, shall be paid on the Effective Date. Any statutory fees accruing after the Confirmation Date shall be paid by the Disbursing Agent.

**12.9** <u>Modification of Plan</u>. The Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan at any time prior to the entry of the Confirmation Order. After the entry of the Confirmation Order, the Debtors and/or the Trustee, as the case may be, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan. A holder of an Allowed Claim or Equity Interest that has accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such holder.

**12.10** <u>Withdrawal or Revocation</u>. The Debtors may withdraw or revoke the Plan at any time prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan prior to the Confirmation Date, or if the Confirmation Date does not occur, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any other person in any further proceedings involving the Debtors.

**12.11** <u>Binding Effect</u>. Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtors and their respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan. The rights, benefits and obligations of any entity named or referred to in the Plan, whose actions may be required to effectuate the terms of the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity (including, but not limited to, any trustee appointed for the Debtors under chapters 7 or 11 of the Bankruptcy Code).

**12.12** <u>Notices</u>. Any notices to or requests of the Debtors and/or the Trustee by parties in interest under or in connection with the Plan shall be in writing and served either by (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

IMPATH Inc.
11 Penn Plaza, 5th Floor
New York, NY 10001
Attn: E. Rocky Bendrihem

*and to the Trustee:*

Anthony H.N. Schnelling
Bridge Associates, LLC
747 Third Avenue, Suite 32-A
New York, NY 10017

*with copies to:*

WEIL, GOTSHAL & MANGES LLP
Attorneys for the Debtors and
    Debtors in Possession
767 Fifth Avenue
New York, New York 10153
Attn: George A. Davis, Esq.

ARENT FOX PLLC
Attorneys for the Creditors Committee
1675 Broadway
25th Floor
New York, NY 10019
Attn: Andrew Silfen, Esq.
    and Schuyler G. Carroll, Esq.

SAUL EWING, LLP
Attorneys for the Equity Committee
100 South Charles Street, 15th Floor
Baltimore, Maryland 21201
Attn: John J. Jerome, Esq.
    and Joyce A. Kuhns, Esq.

MAYER BROWN ROWE & MAW LLP
Attorneys for the Debtors' Prepetition and
Postpetition Lenders
1675 Broadway
New York, New York 10019
Attn: Frederick Hyman, Esq.

LOWENSTEIN SANDLER PC
Bankruptcy Attorneys for Lead Plaintiffs
65 Livingston Avenue
Roseland, New Jersey 07068
Attn: Michael S. Etkin, Esq.

**12.13** <u>Severability</u>. In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtors, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or

interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**12.14** <u>Governing Law</u>. Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflicts of law thereof.

**12.15** <u>Headings</u>. Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

**12.16** <u>Exhibits</u>. All Exhibits and Schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

**12.17** <u>Failure of Effective Date</u>. In the event that the Effective Date does not occur, nothing in this Plan, including, without limitation, the releases contained herein, shall be binding on the Debtors, their estates, the Creditors Committee, the Equity Committee, or any other entity, or otherwise be of any force or effect.

**12.18** <u>Miscellaneous</u>. Nothing contained herein, in an order confirming the Plan, or in any other order in the Chapter 11 Cases (including any order entered after any conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the purchase agreement with Genzyme Corporation or that certain order dated April 7, 2004 approving the sale embodied in the purchase agreement with Genzyme Corporation.

**12.19** <u>Plan Controls</u>. To the extent the Plan is inconsistent with the Disclosure Statement, the provisions of the Plan shall be controlling.

Dated: January ~~14,~~18, 2005
       New York, New York

                         IMPATH Inc.,
                         a Delaware corporation
                         (for itself and on behalf of each of the Debtors)

                         By: <u>/s/ George S. Frazza</u>
                         Name: George S. Frazza
                         Title:  Director & Responsible Officer

Document comparison done by DeltaView on Tuesday, January 18, 2005 10:26:21 PM

| Input: | |
|---|---|
| Document 1 | pcdocs://ny2/1396191/35 |
| Document 2 | pcdocs://ny2/1500989/2 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 196 |
| Deletions | 227 |
| Moved from | 1 |
| Moved to | 1 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 425 |