**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

In re                       :        **Chapter 11 Case No.**

                           :

**IMPATH INC., et al.,**      :        **03- 16113 (PCB)**

                           :

          **Debtors.**       :        **(Jointly Administered)**

                           :

------------------------------------------------------------x

## ORDER PURSUANT TO SECTION 1129(a) OF THE BANKRUPTCY CODE AND RULE 3020 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE CONFIRMING DEBTORS' THIRD AMENDED JOINT PLAN OF LIQUIDATION

The Debtors' Third Amended Joint Plan of Liquidation under Chapter 11 of the Bankruptcy Code, dated January 20, 2005 (the "Plan"), a copy of which is annexed hereto as Exhibit A, having been filed with the Bankruptcy Court (the "Court") by IMPATH Inc. and its subsidiaries that are debtors in the above-referenced chapter 11 cases (collectively, the "Debtors"); and the Third Amended Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code (the "Disclosure Statement") and the Plan having been transmitted to holders of Claims against and Equity Interests in the Debtors and other parties in interest, as evidenced by the Affidavit of Service of Kenneth Altman of The Altman Group, Inc., sworn to on February 17, 2005 (the "Altman Affidavit"), all as provided for and in accordance with the order of the Court dated January 21, 2005 (the "Disclosure Statement Order") approving, among other things, the Disclosure Statement, a notice of the Confirmation Hearing (the "Confirmation Hearing Notice"), and establishing solicitation and tabulation procedures; and the hearing to consider confirmation of the Plan having been held before the Court on March 15, 2005

(the "Confirmation Hearing") after due notice to holders of Claims against and Equity Interests in the Debtors and other parties in interest in accordance and compliance with the Disclosure Statement Order, the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and upon all of the proceedings had before the Court and after full consideration of (a) each of the objections filed to confirmation of the Plan, (b) the Debtors' Omnibus Response to Objections to Third Amended Joint Plan of Liquidation, dated March 11, 2005 (the "Response"), (c) the Debtors' Memorandum of Law in Support of Confirmation of Third Amended Joint Plan of Liquidation filed by the Debtors, dated March 11, 2005 (the "Confirmation Memorandum"); and the appearances of all interested parties having been duly noted in the record of the Confirmation Hearing; and upon all of the evidence adduced in connection with the Confirmation Hearing, including the Affidavit of Holly Felder Etlin in Support of Confirmation of Debtors' Third Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code, sworn to on March 11 2005 (the "Etlin Affidavit"); and all other pleadings filed and proceedings had in these cases, the Court hereby **FINDS, DETERMINES, AND CONCLUDES THAT:**

<u>**GENERAL PROVISIONS, DEFINITIONS AND JUDICIAL NOTICE**</u>

      A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.      To the extent that any of the following findings of fact constitute conclusions of law, this Court adopts them as such.  To the extent that any of the following conclusions of law constitute findings of fact, this Court adopts them as such.

C.      Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan.  Any term used in the Plan or this order (the "Confirmation Order") that is not defined in the Plan or this Confirmation Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

D.      This Court takes judicial notice of the docket of these chapter 11 cases maintained by the Clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and evidence and argument made, proffered, or adduced at the hearings held before the Court during the pendency of these chapter 11 cases, including, but not limited to, the Confirmation Hearing.

## THE CHAPTER 11 CASES

E.      On September 28, 2003 (the "Commencement Date"), the Debtors each commenced a case under chapter 11 of the Bankruptcy Code before this Court.  The Debtors continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code throughout the pendency of these chapter 11 cases.

F.      After filing for bankruptcy, the Debtors determined, after considering their restructuring alternatives, to sell their businesses as going concerns in order to maximize value for their estates and creditor constituencies.  This Court

approved on three different occasions, the Debtors' motions for authority to sell their businesses pursuant to section 363 of the Bankruptcy Code.

G.    Ultimately, the Debtors sold substantially all of their assets for in excess of $240 million, in the aggregate. As a result of the success of the Debtors' sale efforts, the Debtors generated sufficient cash to pay their creditors in full plus interest, and provide a meaningful distribution to the holders of Securities Litigation Claims and Equity Interests as well.

H.    On January 21, 2005, the Court approved, among other things, the Debtors' Disclosure Statement, solicitation packages and procedures for distribution thereof, the forms of ballot, and the establishment of procedures for voting on the Plan.

## CLAIMS AND VOTING AGENT

I.    As provided for and in accordance with an order by the Court dated September 30, 2003 (the "Altman Retention Order"), the Debtors retained and employed The Altman Group, Inc. ("Altman") as the claims and noticing agent in connection with the Debtors' chapter 11 cases. Pursuant to the Altman Retention Order and the terms and conditions of the retention agreement, dated September 25, 2003, Altman was authorized and directed, among other things, to perform all related tasks to processing proofs of claims, maintaining a claims register, and serving as voting agent in these cases.

## SOLICITATION AND NOTICE

J.    The Disclosure Statement, the Plan, the Ballots, the Disclosure Statement Order, the Confirmation Hearing Notice, and letters recommending acceptance of the Plan from the Debtors, the Creditors Committee, and the Equity Committee, as

appropriate, were transmitted and served in compliance with the Bankruptcy Code, the

Bankruptcy Rules and the Disclosure Statement Order. As evidenced by the Altman

Affidavit, the transmittal and service of the foregoing was adequate and sufficient under

Bankruptcy Rule 3017(d) and the circumstances of these chapter 11 cases.

K.      Adequate and sufficient notice of the Confirmation Hearing,

including the March 8, 2005 deadline for the filing of any and all objections to

confirmation of the Plan and other requirements and deadlines, hearings and matters

described in the Disclosure Statement Order was provided in compliance with the

Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order. As

evidenced by the Altman Affidavit, the Confirmation Hearing Notice was mailed on or

before February 4, 2005 to holders of Claims against and Equity Interests in the Debtors

and other parties in interest. In addition, as evidenced by the Affidavit of Publication of

Kelly Walker, sworn to on February 10, 2005, the Confirmation Hearing Notice was

published in *The Wall Street Journal* (National Edition) on February 10, 2005. No other

or further notice of the Confirmation Hearing was or is required.

L.      On March 10, 2005, Altman filed the Affidavit of Kenneth L.

Altman Certifying Ballots Accepting or Rejecting the Debtors' Third Amended Joint

Plan of Liquidation Under Chapter 11 of the Bankruptcy Code, dated and sworn to on

March 10, 2005, attesting and certifying the method and results of the ballot tabulation

for the Classes of Claims and Equity Interests (Classes 1, 2, 4, 5 & 6) entitled to vote to

accept or reject the Plan (collectively, the "Voting Report"). An amended Voting Report

was filed on March 14, 2005.

M.    Votes to accept and reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and industry practice.

## THE PLAN

N.    Good Faith.  The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  The Debtors' good faith is evident from the facts and records of these chapter 11 cases, the Disclosure Statement and the hearings thereon, and the record of the Confirmation Hearing and other proceedings held in these chapter 11 cases.

O.    Legitimate Purpose.  The Debtors proposed the Plan with the legitimate and honest purpose of effectuating an orderly liquidation of the Debtors' assets and distribution of proceeds to holders of Claims and Equity Interests in accordance with the priorities established in the Bankruptcy Code or as otherwise agreed by the parties.

P.    Best Interest; No Unfair Discrimination.  Each holder of an impaired Claim and Equity Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

Q.    Section 1125(e); Exculpations.  Based on the record before the Court in these chapter 11 cases, the Debtors, the Trustee, the Lenders, the DIP Lenders, the Creditors Committee, the Equity Committee, the Lead Plaintiffs, and their respective directors, officers, employees, members, agents, consultants, attorneys, and advisors (acting in such capacity) have acted in "good faith" within the meaning of

section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of votes on the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 9.6 of the Plan, *provided, however,* that nothing herein shall affect the liability of any entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence, willful misconduct, or breach of fiduciary duty.

R.   Feasibility. The evidence proffered or adduced at the Confirmation Hearing (a) is persuasive and credible, (b) has not been controverted by other evidence, and (c) establishes that the Plan has a reasonable likelihood of success.

S.   Substantive Consolidation. Substantive consolidation of the Debtors into a single entity for purposes of all actions under the Plan is appropriate and warranted. No creditor of any of the Debtors will be prejudiced by the substantive consolidation of the Debtors, which will benefit all creditors and equity holders of the Debtors.

T.   Settlement of Potential Litigation. Two settlements form the cornerstones of the Plan: (i) the settlement between the Creditors Committee and the Equity Committee on the appropriate rate of interest to be paid on account of unsecured claims in these cases and (ii) the Class Action Settlement. Both of these settlements were reached by the parties after extensive analysis and good faith negotiations, and are fair, prudent, and reasonable compromises of the controversies resolved by such settlements

and avoid the need for protracted and costly litigation of the underlying factual and legal issues resolved by such settlements. Notwithstanding approval of the Class Action Settlement by this Court, the Class Action Settlement and the Settlement Agreement are subject to approval by final order of the United States District Court for the Southern District of New York (the "District Court") and the Plan shall not become effective unless and until such approval is obtained.

U.    Releases and Injunctions. The releases and injunctions under the Plan in favor of the Debtors, their present and former directors, officers, and employees, and the D&O Insurers are essential elements of the Class Action Settlement and the ability to consummate the Plan. The Plan is predicated upon the Class Action Settlement and the consideration provided by the D&O Insurers and individual named defendants in the Securities Class Action Lawsuit. The injunctions and releases were key components of the negotiations with respect to the Plan. With respect to the D&O Insurers, the D&O Insurers would not have agreed to provide the consideration under the Class Action Settlement without the injunctions provided to such insurers under the Plan. Similarly, the individual defendants would not have agreed to waive their claims against the Debtors' directors and officers insurance policies absent a full release of claims against them under the Plan. These contributions are material in relation to the size of these cases, allow for a higher distribution to creditors and equity holders, allow for the availability of over $15 million in insurance proceeds to fund the Class 6 Allocation, and contribute materially to the feasibility of the Plan.

V.    Satisfaction of Confirmation Requirements. The Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

In view of the foregoing, and taking into particular account the Voting Report, Confirmation Memorandum, the Etlin Affidavit, and the Response, and upon (a) all the evidence proffered or adduced at or in connection with, memoranda and objections filed in connection with, and arguments of counsel made at, the Confirmation Hearing, and (b) the entire record of these chapter 11 cases; and after due deliberation thereon and good cause appearing therefor, the Court **ORDERS, ADJUDGES, AND DECREES THAT:**

1.    <u>Resolution of Objections</u>.  All objections to confirmation of the Plan or the relief requested therein that have not been withdrawn, waived, or resolved, are overruled.

2.    <u>Confirmation of Plan</u>.  The Plan is APPROVED and CONFIRMED under section 1129 of the Bankruptcy Code.  The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

### THE COURT'S JURISDICTION

3.    This Court has jurisdiction to confirm the Plan pursuant to sections 157 and 1334 of title 28 of the United States Code.

4.    Venue before this Court is proper pursuant to sections 1408 and 1409 of title 28 of the United States Code.

5.    Confirmation of the Plan is a core proceeding pursuant to section 157(b)(2)(L) of title 28 of the United States Code.

6.    This Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

7.    The Court hereby retains jurisdiction over the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

8.    <u>Burden of Proof</u>. The Debtors have the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence. The Debtors have proven the elements of 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

**COMPLIANCE WITH
<u>SECTION 1129(a)(1) OF THE BANKRUPTCY CODE</u>**

9.    The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(a)    <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>. In addition to Administrative Expense Claims (including Administrative Expense Claims for compensation for services rendered or reimbursement of expenses incurred) and Priority Tax Claims, which need not be designated, the Plan designates six Classes of Claims and Equity Interests. The Claims and Equity Interests placed in each Class are substantially similar to the other Claims and Equity Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Equity Interests. Accordingly, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b)    <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>. Article III of the Plan specifies that Class 3 is unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)  <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>.

Article IV of the Plan designates Classes 1, 2 4, 5 and 6 as impaired and specifies the

treatment of Claims and Equity Interests in those Classes, thereby satisfying section

1123(a)(3) of the Bankruptcy Code.

(d)  <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.  The Plan provides for

the same treatment by the Debtors for each Claim or Equity Interest in each respective

Class unless the holder of a particular Claim or Equity Interest has agreed to a less

favorable treatment of such Claim or Equity Interest, thereby satisfying

section 1123(a)(4) of the Bankruptcy Code.

(e)  <u>Implementation of Plan (11 U.S.C. § 1123(a)(5))</u>.  The Plan, the

various documents and agreements described in the Plan, the Exhibits to the Plan,

including the Settlement Agreement and the Liquidating Trust Agreement, provide

adequate and proper means for the Plan's implementation, including (i) the consolidation

of the Debtors for all purposes under the Plan, (ii) the dissolution of the Debtors on the

Effective Date, and (iii) the establishment of the Liquidating Trust, thereby satisfying

section 1123(a)(5) of the Bankruptcy Code.

(f)  <u>Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6)) and Designation</u>

<u>of Directors (11 U.S.C. § 1123(a)(7))</u>.  Section 6.3 of the Plan provides for the dissolution

of the Debtors on the Effective Date and, therefore, section 1123(a)(6) and (7) of the

Bankruptcy Code are inapplicable in these chapter 11 cases.

(g)  <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>.  The Plan's

provisions are appropriate and not inconsistent with the applicable provisions of the

Bankruptcy Code.

(h) Bankruptcy Rule 3016(a). The Plan is dated and identifies the

Debtors as its proponents, thereby satisfying Bankruptcy Rule 3016(a).

## COMPLIANCE WITH
## SECTION 1129(a)(2) OF THE BANKRUPTCY CODE

10.     The Debtors have complied with the applicable provisions of the

Bankruptcy Code, including, without limitation, the disclosure and solicitation

requirements under sections 1125 and 1126 of the Bankruptcy Code, thereby satisfying

section 1129(a)(2) of the Bankruptcy Code. Specifically:

    a.    The Debtors are proper debtors under section 109 of the
Bankruptcy Code.

    b.    The Debtors have complied with applicable provisions of
the Bankruptcy Code, except as otherwise provided or
permitted by orders of the Court.

    c.    The Debtors have complied with the applicable provisions
of the Bankruptcy Code, the Bankruptcy Rules, and the
Disclosure Statement Order in transmitting the Plan, the
Disclosure Statement, the Ballots, and related documents
and notices and in soliciting and tabulating votes on the
Plan.

## COMPLIANCE WITH
## SECTIONS 1129(a)(3) THROUGH (a)(13) OF THE BANKRUPTCY CODE

11.     Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The

Debtors have proposed the Plan in good faith and not by any means forbidden by law,

thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtors' good faith is

evident from the facts and records of these chapter 11 cases, the Disclosure Statement

and the hearings thereon, and the record of the Confirmation Hearing and other

proceedings held in these chapter 11 cases. The Plan was proposed with the legitimate

and honest purpose of effectuating an orderly liquidation of the Debtors' assets and

distribution of proceeds to holders of Claims and Equity Interests in accordance with the priorities established in the Bankruptcy Code or as otherwise agreed by the parties.

12.    Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payment made or to be made by any of the Debtors for services or for costs and expenses in or in connection with these chapter 11 cases, or in connection with the Plan and incident to these chapter 11 cases, has been approved by, or is subject to the approval of, the Court under a standard of reasonableness, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

13.    Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The Plan provides for the dissolution of the Debtors on the Effective Date. However, the Debtors have disclosed and described that Anthony H.N. Schnelling will be the trustee of the Liquidating Trust and will administer the Debtors' estates on an after the Effective Date. The Debtors or the Equity Committee will disclose the compensation proposed to be paid for Mr. Schnelling for acting as Liquidating Trustee on and after the Effective Date.

14.    No Rate Changes (11 U.S.C. § 1129(a)(6)). The Plan does not provide for rate changes subject to the jurisdiction of any governmental agency. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in these chapter 11 cases.

15.    Best Interests of Creditors (11 U.S.C. § 1129(a)(7)). The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analyses provided in the Disclosure Statement and other evidence proffered or adduced at the Confirmation Hearing (a) are persuasive and credible, (b) have not been controverted by other evidence, and (c) establish that each holder of an impaired Claim or Equity Interest either

has accepted the Plan or will receive or retain under the Plan, on account of such Claim

or Equity Interest, property of a value, as of the Effective Date, that is not less than the

amount that such holder would receive or retain if the Debtors were liquidated under

chapter 7 of the Bankruptcy Code on such date.

16.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Class 3

of the Plan consists of unimpaired Claims that are conclusively presumed to have

accepted the Plan under section 1126(f) of the Bankruptcy Code. There are no holders of

Claims in Class 1 and, therefore, no one to vote on the Plan in connection with such class.

Classes 2, 4, 5 and 6 have voted to accept the Plan in accordance with sections 1126(c)

and (d) of the Bankruptcy Code.

17.    Treatment of Administrative Expense and Tax Claims (11 U.S.C.

§ 1129(a)(9)). The treatment of Allowed Administrative Expense Claims and Allowed

Priority Non-Tax Claims pursuant to Sections 2.1 and 4.1 of the Plan satisfies the

requirements of sections 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the

treatment of Allowed Priority Tax Claims pursuant to Section 2.3 of the Plan satisfies the

requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

18.    Acceptance By Impaired Classes (11 U.S.C. § 1129(a)(10)). At

least one Class of Claims against the Debtors that is impaired under the Plan has accepted

the Plan, determined without including any acceptance of the Plan by any insider, thus

satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

19.    Feasibility (11 U.S.C. § 1129(a)(11)). The evidence proffered or

adduced at or in connection with the Confirmation Hearing (a) is persuasive and credible,

(b) has not been controverted by other evidence, and (c) establishes that the Plan has a

reasonable likelihood of success, thus satisfying the requirements of section 1129(a)(11)

of the Bankruptcy Code.

20.    Payment of Fees (11 U.S.C. § 1129(a)(12)).  All fees payable

under section 1930 of title 28 of the United States Code, as determined by the Court, have

been paid or will be paid pursuant to Section 12.8 of the Plan.  In addition, pursuant to

Section 12.8 of the Plan, after the Effective Date, such fees will be paid by the Disbursing

Agent.  Thus Section 12.8 of the Plan satisfies the requirements of section 1129(a)(12) of

the Bankruptcy Code.

21.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  The

Debtors have never funded nor maintained any retiree benefit plans, funds, or programs

as defined in section 1114 of the Bankruptcy Code.  Accordingly, the Debtors are not

required to make such payments.  Thus, the requirements of section 1129(a)(13) of the

Bankruptcy Code are satisfied.

## PURPOSE AND GOOD FAITH

22.    Principal Purpose of the Plan (11 U.S.C. § 1129(d)).  The principal

purpose of the Plan is not the avoidance of taxes or the avoidance of the application of

section 5 of the Securities Act of 1933.

23.    Section 1125(e); Exculpations.  Based on the record before the

Court in these chapter 11 cases, the Debtors, the Trustee, the Lenders, the DIP Lenders,

the Creditors Committee, the Equity Committee, and the Lead Plaintiffs, and their

respective directors, officers, employees, members, advisors, consultants, attorneys, and

agents (acting in such capacity) have acted in "good faith" within the meaning of

section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of

the Bankruptcy Code and Bankruptcy Rules in connection with their respective activities

relating to the solicitation of acceptances to the Plan and their participation in the

activities described in section 1125 of the Bankruptcy Code, and are entitled to the

protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation

provisions set forth in Section 9.6 of the Plan.

### COMPROMISE AND SETTLEMENT OF PLAN DISPUTED ISSUES

24.     Pursuant to Bankruptcy Rule 9019(a), the compromises and

settlements contained in the Plan, including the Class Action Settlement and the

Settlement Agreement, are fair and reasonable, in the best interest of the Debtors' estates,

creditors and parties in interest, and shall be, and hereby are, authorized and approved.

The Debtors are authorized and empowered to take any and all actions in connection with

such compromises and settlements in accordance with the terms of the Plan.

Notwithstanding anything contained herein to the contrary, the Class Action Settlement

and the Settlement Agreement shall be subject to approval by final order of the District

Court and the Plan shall not be effective unless and until so approved.

(a)     Nothing in Section 3.4 of the Settlement Agreement purports to or

shall expand or contract the rights of the Released Persons under the provisions of the

Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4,

including Sections 4(f)(7)(A) and 4(f)(7)(B), 15 U.S.C. § 78u-4(f)(7)(A) and (B) and

applicable case law interpreting same. Likewise, nothing in Section 3.4 of the Settlement

Agreement purports to or shall deprive any person of, or alter the rights, claims and/or

defenses (by way of judgment reduction or otherwise) that any person has under the

PSLRA, including Sections 4(f)(7)(A) and 4(f)(7)(B), 15 U.S.C. § 78u-4(f)(7)(A) & (B) and applicable case law interpreting same.

(b)    Nothing in the Plan or this Confirmation Order shall impair or prejudice in any way any rights, claims and/or defenses of the Settling Parties, the Equity Committee, the Insurers, or KPMG LLP in any subsequent proceeding before the District Court in connection with consideration of the Settlement Agreement (including, in the case of KPMG, to object to or otherwise challenge approval of the Settlement Agreement on any grounds), all of which rights, claims and/or defenses are expressly reserved hereunder. In addition, nothing in this Confirmation Order shall constitute or be construed as a finding of fact or conclusion of law as to any of the objections to the Settlement Agreement raised by KPMG in its objection to confirmation of the Plan, all of which are expressly reserved for consideration by the District Court, except for objections to confirmation of the Plan itself, *including an objection to the injunction with respect to claims against the Insurers,*

25.    Pursuant to and in furtherance of the Class Action Settlement, the class proof of claim filed by Lead Plaintiffs in these chapter 11 cases is hereby deemed reduced and Allowed in the amount of the Class 6 Allocation for purposes of distribution. All other proofs of claim asserting Securities Litigation Claims (including, but not limited to, those claims listed on Exhibit B to the Plan), other than timely filed Allowed Opt-Out Securities Litigation Claims, are hereby disallowed and expunged as duplicative of the class proof of claim filed by Lead Plaintiffs; *provided, however,* that the allowance of the class proof of claim on these terms shall not inure to the benefit of any one individual holder of a Securities Litigation Claim.

## OBJECTIONS TO CLAIMS

26.     The provisions of Sections 7.1 through 7.6, including, without

limitation, the provisions governing procedures for resolving Disputed Claims,

distributions, and reserves, are found to be fair and reasonable and are hereby approved.

## ADDITIONAL IMPLEMENTATION PROVISIONS

27.     <u>Plan Classification Controlling</u>.  The classification of Claims and

Equity Interests for purposes of the distributions to be made under the Plan shall be

governed solely by the terms of the Plan.  The classifications set forth on the Ballots

tendered to or returned by the Debtors' creditors in connection with voting on the Plan

(a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan,

(b) do not necessarily represent, and in no event shall be deemed to modify or otherwise

affect, the actual classification of such Claims and Equity Interests under the Plan for

distribution purposes, and (c) shall not be binding on the Debtors or the Trustee.

28.     <u>Disbursing Agent</u>.  Subject to Section 6.5 of the Plan, all

distributions under the Plan shall be made by the Disbursing Agent.  The Disbursing

Agent shall not be required to give any bond or surety or other security for the

performance of its duties.  The Disbursing Agent is authorized to (i) effect all actions and

execute all agreements, instruments and other documents necessary to perform its duties

under the Plan, (ii) make all distributions contemplated by the Plan, (iii) employ

professionals to represent it with respect to its responsibilities and (iv) exercise such other

powers as deemed by the Disbursing Agent to be necessary and proper to implement the

provisions of the Plan.  The reasonable fees and reasonable and actual expenses of the

Disbursing Agent shall be paid by the Trustee after the Effective Date from the assets of the Liquidating Trust.

29.    <u>Distributions to Holders of Allowed Claims and Allowed Equity Interests as of the Record Date</u>. On the applicable Record Date, the claims register and equity transfer registers shall be closed, and there shall be no further changes in the record holders of any Claim or Equity Interest except as set forth in Section 5.4(d) of the Plan. The Disbursing Agent shall have no obligation to recognize any transfer of any Claim or Equity Interest occurring after the Record Date; *provided, however,* that the Disbursing Agent shall recognize transfers of Class A Beneficial Interests in the Liquidating Trust to the extent they are transferable pursuant to Section 6.5(g) of the Plan.

30.    <u>Unclaimed Property (11 U.S.C. § 347)</u>. If any distribution to a holder of an Allowed Claim or Equity Interest is returned as undeliverable, no further distributions to such holder shall be made unless and until the Disbursing Agent is notified of such holder's then-current address, at which time all missed distributions shall be made as soon as is practicable to such holder, without interest. Checks issued by the Disbursing Agent or Trustee shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for re-issuance of any check shall be made in accordance with the notice provisions of Section 12.12 of the Plan. All claims for undeliverable distributions or voided checks shall be made on or before the earlier of (i) one-hundred twenty (120) days after the date such undeliverable distribution was initially made, or (ii) thirty (30) days before the Final Distribution Date, except that checks issued on the Final Distribution Date shall not be reissued. After the earlier of

such dates, all such distributions shall be deemed unclaimed property under section

347(b) of the Bankruptcy Code and shall, in the Trustee's discretion, be used first to

satisfy the costs of administering and fully consummating the Plan and administering the

estates and thereafter any remaining funds shall become Available Cash for distribution

in accordance with the Plan. Such holder shall not be entitled to any other or further

distribution under the Plan on account of such Claim or Equity Interest.

31.     Binding Effect. On or after the Confirmation Date, the Plan and its

provisions shall be binding upon the Debtors (and their respective successors and assigns)

and any holder of a Claim against or Equity Interest in the Debtors whether or not the

Claim or Equity Interest of such holder is impaired under the Plan and whether or not

such holder or entity has accepted the Plan.

32.     Vesting of Assets (11 U.S.C. § 1141(b), (c)). Pursuant to Section

9.2 of the Plan, except as otherwise provided in the Plan, upon the Effective Date, all

property of the Debtors' estates shall vest in the Debtors, and in accordance with Article

VI of the Plan and subject to the exceptions contained therein and in the Liquidating

Trust Agreement, the Liquidating Trust Assets shall be transferred to the Liquidating

Trust. From and after the Effective Date, the Trustee may dispose of the Liquidating

Trust Assets free of any restrictions of the Bankruptcy Code, but in accordance with the

provisions of the Plan and the Liquidating Trust Agreement. In addition, as of the

Effective Date, all assets of the Debtors and the Liquidating Trust shall be free and clear

of all Claims, except as provided in the Plan or this Confirmation Order.

33.     Rejection of Executory Contracts and Unexpired Leases (11

U.S.C. § 1123(b)(2)). Pursuant to Section 8.1 of the Plan, as of the Effective Date, all

executory contracts and unexpired leases as to which any of the Debtors are parties are

rejected, except for an executory contract or unexpired lease (a) that has been assumed or

rejected pursuant to an order entered prior to the Confirmation Date, or (ii) as to which a

motion for approval of the assumption or rejection of such contract or lease has been filed

and served prior to the Confirmation Date.

34.    <u>Bar Date for Rejection Damage Claims</u>.  The provisions of

Section 8.3 of the Plan governing the filing of proofs of claim relating to the rejection of

an executory contract or unexpired lease by any of the Debtors pursuant to Section 8.1 of

the Plan are hereby approved and found to be fair and reasonable.  The deadline for filing

such Claims is the date that is twenty (20) days after the Confirmation Date.

35.    <u>Indemnification and Reimbursement Obligations</u>.  Pursuant to

Section 8.5 of the Plan, the assumption of any indemnification obligations of the Debtors

pursuant to corporate charters, by-laws or other agreements to those directors, officers, or

employees who served in such capacity on or after the Commencement Date is approved

effective as of the Effective Date; *provided, however*, that, notwithstanding the

foregoing, such obligations shall not be extended to any director, officer, or employee

whose term in all such capacities expired or was terminated prior to October 1, 2003.

Any other prepetition indemnification obligations shall be limited to the reimbursement

of directors, officers, and/or employees, other than Culpable Individuals, for legal fees

and expenses and shall be assumed under and survive confirmation of the Plan in a total

amount not to exceed $300,000 for fees and expenses incurred as of the date of the

Settlement Agreement and $1,000,000 for fees and expenses incurred thereafter payable

solely from the Indemnity Reserve, in the aggregate, for all directors, officers, and/or

employees. Funds from such Indemnity Reserve will be paid to eligible directors,

officers, and/or employees pursuant to the terms of the Settlement Agreement. By

accepting a distribution under the Plan, any officer, director or employee who served in

such capacity at any time prior to or after the Commencement Date will be deemed to

have waived any and all Claims against the Debtors that meet the requirements of section

502(e)(1)(B) of the Bankruptcy Code. Other than as set forth herein and in the Plan,

nothing herein shall be deemed to be an assumption of any other prepetition

indemnification obligation and any such obligations are rejected.

   36. <u>General Authorizations</u>. Each of the Debtors (or the Trustee, after

the Effective Date) is authorized to execute, deliver, file, or record such contracts,

instruments, releases, and other agreements or documents and take such actions as may

be necessary or appropriate to effectuate, implement, and further evidence the terms and

conditions of the Plan. The Debtors and their directors, officers, members, agents, and

attorneys, are authorized and empowered to issue, execute, deliver, file, or record any

agreement, document, or security, including, without limitation, the Settlement

Agreement, as modified, amended, and supplemented, in substantially the form included

therein, and to take any action necessary or appropriate to implement, effectuate, and

consummate the Plan in accordance with its terms, or take any or all corporate actions

authorized to be taken pursuant to the Plan including the merger of any of the Debtors

and the dissolution of each of the Debtors, and any release, amendment, or restatement of

any bylaws, certificates of incorporation, or other organization documents of the Debtors,

whether or not specifically referred to in the Plan, without further order of the Court, and

any or all such documents shall be accepted by each of the respective state or other

governmental filing offices and recorded in accordance with applicable state or other

laws and shall become effective in accordance with their terms and the provisions of any

state or other laws. Pursuant to Section 6.3 of the Plan, the Debtors are authorized to file

certificates of cancellation, dissolution, or merger without further action under applicable

law, regulation, order, or rule, including without express or implied limitation, any action

by the stockholders, members, or directors (or other governing body) of the Debtors.

      37.     Securities Laws Exemption. The offering, issuance, and

distribution of the beneficial interests in the Liquidating Trust are exempt from the

provisions of section 5 of the Securities Act of 1933, as amended, and any state or local

law requiring registration for the offer, issuance, distribution, or sale of a security by

reason of section 1145(a) of the Bankruptcy Code.

      38.     Substantive Consolidation. Subject to the occurrence of the

Effective Date, the Debtors shall be deemed consolidated for all purposes under the Plan,

with the effect that: (i) all assets and liabilities of the Debtors shall be deemed merged so

that all of the assets of the Debtors shall be available to pay all of the liabilities under the

Plan as if it were one company, (ii) no distributions shall be made under the Plan on

account of intercompany claims among the Debtors, (iii) no distributions will be made

under the Plan on account of Impath's interests in its subsidiaries, (iv) all guarantees of

the Debtors of the obligations of any other Debtor shall be deemed eliminated so that any

claim against any Debtor and any guarantee thereof executed by any other Debtor and

any joint or several liability of the Debtors shall be deemed to be one obligation of the

consolidated Debtors, and (v) each and every Claim filed or to be filed in the Chapter 11

Case of any of the Debtors shall be deemed filed against the consolidated Debtors, and shall be deemed one Claim against and obligation of the consolidated Debtors.

39.     Settlement Agreement and Liquidating Trust Agreement.  The Settlement Agreement and the Liquidating Trust Agreement, and any subsequent amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtors at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereof by the Debtors and/or the Trustee, as the case may be, are authorized and approved.  Without the need for further order, the Debtors and the Trustee are authorized and empowered to make modifications to such documents that do not materially diminish the rights or projected recoveries of holders of Claims or Equity Interests and are no inconsistent with the Plan.

40.     Governmental Approvals.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority in the United States with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto; *provided, however,* that the Effective Date of the Plan is and shall be conditioned upon approval of the Settlement Agreement by the District Court.

41.     Taxes.  Pursuant to section 1146(c) of the Bankruptcy Code,  the assignment or surrender of any lease or sublease, or the delivery of any deed or other

instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, deeds, bills of sale, or assignments in connection with the disposition of assets contemplated by the Plan (including transfers of assets to and by the Liquidating Trust) shall not be subject to any stamp, recording, personal property transfer, real estate transfer, sales, use, or other similar tax.

42.    Final Fee Applications. The deadline for filing final applications for allowance of compensation for services rendered and reimbursement of expenses incurred (including, without limitation, compensation and reimbursement under section 503(b)(3) and (4) of the Bankruptcy Code) is the date that is sixty (60) days after the Effective Date or such other date as may be fixed by this Court. Such Claims shall be paid in full in such amounts as are allowed by the Court on the date upon which the order allowing such Administrative Expense Claim is entered or as soon thereafter as is practicable, or upon such other terms as may be mutually agreed upon by such holder of an Administrative Expense Claim and the Debtors or the Trustee, as the case may be.

43.    Releases, Exculpations and Injunctions. The release, exculpation and injunction provisions contained in Sections 9.5, 9.6 and 9.7 of the Plan are fair and equitable, are given for valuable consideration, and are in the best interests of the Debtors and their chapter 11 estates, and such provisions shall be effective and binding upon all persons and entities. Pursuant to sections 105 and 1141 of the Bankruptcy Code, on and after the Confirmation Date, all persons are permanently enjoined from commencing or continuing in any manner:

(a)    any action or proceeding (whether directly, indirectly, derivatively or otherwise) on account of or respecting any claim, debt, right or cause of action of the

Debtors and Debtors in Possession (i) for which the Debtors, the Debtors in Possession, or the Liquidating Trust retain sole and exclusive authority to pursue in accordance with the Plan or (ii) which has been released or extinguished pursuant to Sections 8.5, 9.4 or 9.5 of the Plan; and

(b)      any suit, action or other proceeding against the D&O Insurers, based upon or with respect to (i) any and all claims arising out of any action or alleged breach of fiduciary duty, neglect, error, misstatement, misleading statement, omission or act by the Debtors and/or its directors, officers, and employees, and (ii) National Union Executive Organization Liability Insurance Policy No. 382-61-89, ACE Policy No. DOXG 21657827001, and Travelers Policy No. 103307250.

44.      Termination of Injunctions and Automatic Stay.  Pursuant to Section 9.1 of the Plan, unless otherwise provided, all injunctions or stays provided for in these chapter 11 cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the close of the Debtors' chapter 11 cases.

45.      Cancellation of Existing Securities and Agreements.  Pursuant to Section 6.7 of the Plan, except for purposes of evidencing a right to distributions under the Plan or otherwise provided in the Plan, on the Effective Date (i) the Common Stock, to the extent not already cancelled, shall be cancelled, and (ii) the obligations of the Debtors under the Common Stock and under the Debtors' certificates of incorporation and any agreements governing the Common Stock shall be extinguished; *provided, however,* that each agreement that governs the rights of the holder of an Equity Interest based on the Common Stock and that is administered by an agent or servicer shall

continue in effect solely for the purposes of (a) allowing such agent or servicer to make

the distributions to be made on account of such Equity Interests under the Plan as

provided in Article IV of the Plan and (b) permitting such agent or servicer to maintain

any rights it may have for fees, costs, and expenses under such other agreement. Any

actions taken by an agent or servicer that are not for the purposes authorized by the Plan

shall not be binding upon the Debtors.

46.      <u>Means for Implementation of Plan</u>. Except as otherwise expressly

provided herein, all provisions set forth in Article VI of the Plan with respect to the

means for implementation of the Plan, including, without limitation, the transfer of assets

to the Liquidating Trust set forth in Section 6.5 of the Plan, are fair and reasonable and

are hereby approved.

<b><u>THE LIQUIDATING TRUST</u></b>

47.      <u>Liquidating Trust</u>. The establishment of the Liquidating Trust in

accordance with the Liquidating Trust Agreement and the appointment of Anthony H.N.

Schnelling as trustee is approved.

48.      <u>Role of the Trustee</u>.

(a)      The Trustee shall have the power, authority, standing, and duty to

(A) hold, manage, sell, and distribute the Liquidating Trust Assets to the holders of

Allowed Claims and Equity Interests in accordance with the Plan, (B) prosecute and

resolve, in the names of the Debtors and/or the name of the Trustee, the Debtors' interests

in all claims and causes of action, including without limitation the Debtors' claims

against their former auditors relating to the alleged accounting issues that are the subject

of the Securities Litigation Claims, (C) prosecute and resolve objections to Disputed

Claims, (D) perform all of the obligations and functions of the Debtors and/or the Trustee under the Plan and applicable law, and (E) administer the closure of the Chapter 11 Cases. The Trustee shall also be responsible for all decisions and duties with respect to the Liquidating Trust and the Liquidating Trust Assets. In all circumstances, the Trustee shall act in the best interests of all beneficiaries of the Liquidating Trust and in furtherance of the purpose of the Liquidating Trust.

(b)     As of the Effective Date, the Trustee shall be authorized and directed to exercise all powers regarding the Debtors' tax matters, including filing tax returns, to the same extent as if the Trustee were the Debtors in Possession. The Trustee shall (A) complete and file within the applicable time periods proscribed by law, to the extent not previously filed, the Debtors' final federal, state, and local tax returns, (B) request an expedited determination of any unpaid tax liability of the Debtors under section 505(b) of the Bankruptcy Code for all tax periods of the Debtors ending after the Commencement Date through the liquidation of the Debtors as determined under applicable tax laws, to the extent not previously requested, and (C) represent the interest and account of the Debtors before any taxing authority in the matters, including, but not limited to, any action, suit, proceeding, or audit.

49.     Indemnification of Trustee of Liquidating Trust. The provisions of Section 6.5(n) of the Plan, including, without limitation, the indemnification of the Trustee of the Liquidating Trust, and the Trustee's agents and professionals, are fair and reasonable and hereby approved.

50.     Post-Effective Date Fees and Expenses. From and after the Effective Date, the Trustee shall, in the ordinary course of business and without the

necessity for any approval by this Court, pay the reasonable fees and expenses of

professional persons thereafter employed by the Debtors, the Creditors Committee, the

Equity Committee, or the Liquidating Trust incurred in connection with the

implementation and consummation of the Plan, the reconciliation of Claims and Equity

Interests, the prosecution of causes of action belonging to the Debtors, or any other

matters as to which such professionals are employed.  The fees and expenses of such

professionals shall be paid by the Trustee within ten (10) Business Days after submission

to the Trustee of an invoice therefor, except to the extent the invoice is disputed.  If the

Trustee disputes the reasonableness of any such invoice, the Trustee shall timely pay the

undisputed portion of such invoice, and the Trustee or the affected professionals may

submit such dispute to the Court for a determination of the reasonableness of such

invoice.

## **MISCELLANEOUS PROVISIONS**

51.     Dissolution of the Creditors Committee and Equity Committee.

On the Effective Date, and in the case of the Equity Committee, after the establishment of

the Liquidating Trust, the Creditors Committee and the Equity Committee shall be

dissolved and the members thereof shall be released and discharged of and from all

further authority, duties, responsibilities, and obligations related to and arising from and

in connection with these chapter 11 cases, and the retention or employment of its

attorneys, accountants, and other agents, shall terminate.  The Creditors Committee and

the Equity Committee shall continue to exist after such date solely with respect to (i) all

applications filed pursuant to sections 330 and 331 of the Bankruptcy Code seeking

payment of fees and expenses incurred by any professional and (ii) any post-confirmation

modifications to, or motions or other actions seeking the enforcement or implementation of the provisions of the Plan or the Confirmation Order.

52.    Termination of Audit Committee. On the Effective Date, the Audit Committee of Impath Inc., and its professionals, shall be terminated and its members released and discharged of and from any further authority, duties, responsibilities or obligations relating to or arising from and in connection with these chapter 11 cases. At the Trustee's request, the Audit Committee and its professionals shall deliver to the Trustee all reports, documents and other materials relating to the Audit Committee's investigation.

53.    Provisions Relating to Genzyme Corporation.

(a)    Nothing contained in the Plan (including but not limited to in any of Sections 1.2, 5.4(b), 6.5(n), 7.3, 7.5 and 8.1 of the Plan) or this Confirmation Order is intended or shall be construed to impair any of (i) the Asset Purchase Agreement By And Among Impath, Inc., Impath Physician Services, Inc., Impath Predictive Oncology, Inc. And Genzyme Corporation, dated as of February 27, 2004, as amended by Amendment No. 1 To The Asset Purchase Agreement entered into as of March 19, 2004 (the "Purchase Agreement"); (ii) the Holdback Escrow Agreement dated as of May 1, 2004 by and among Impath, Inc., Impath Physician Services, Inc., Impath Predictive Oncology, Inc. and Genzyme Corporation and the Escrow Agent ("Holdback Escrow Agreement"); (iii) the Order (i) Authorizing and Approving Sale of Substantially all the Assets of Impath Inc., Impath Physician Services, Inc. and Analytical Services, a Business Unit of Impath Predictive Oncology, Inc., Free and Clear of Liens, Claims, Encumbrances and Interests; (ii) Approving Asset Purchase Agreement; (iii) Authorizing and Approving

Assumption and Assignment of Executory Contracts and Unexpired Leases; and (iv)

Granting Certain Related Relief dated April 7, 2004 [Docket No. 722] (the "Sale Order")

or (iv) any claims, rights, causes of action or liabilities or defenses thereto of any of

Genzyme Corporation to the Debtors or of the Debtors to Genzyme Corporation which in

each case arise out of any of the terms or provisions of said Purchase Agreement,

Holdback Escrow Agreement or Sale Order, including for which claim is made by

Genzyme Corporation in its Protective Request Of Genzyme Corporation For Payment

Of Administrative Expenses Pursuant To Sections 503(B) and 507(A)(1) Of The

Bankruptcy Code et seq., filed by Genzyme Corporation on or about January 18, 2005

[Docket No. 1218], in the sum of not less than $7,613,346, as the same may be amended

("Genzyme's Claim").

    (b)    The Trustee shall reserve Cash in the amount of $7,613,346 for

Genzyme's Claim (the "Genzyme Reserve"), which Cash shall not be included in the

determination of "Available Cash" and which Cash shall not be available for

indemnification of the Trustee and his agents and professionals or for reimbursement of

fees or expenses, unless and until (i) there has been a determination by the Working

Capital Referee (as that term is defined in the Purchase Agreement) pursuant to the

Purchase Agreement, or a Final Order of the Bankruptcy Court, in each case determining

the amount Genzyme is entitled to be paid pursuant to the Purchase Agreement, and (ii)

Genzyme has been paid such amount in full in Cash. In the event that Genzyme amends

Genzyme's Claim, the amount of the Genzyme Reserve stated above shall be without

prejudice to both Genzyme's right to seek a corresponding adjustment to the Genzyme

Reserve and to the rights, defenses and objections of the Debtors and the Trustee with respect to any proposed increase to the Genzyme Reserve.

54.    Nonoccurrence of Effective Date. In the event that the Effective Date does not occur, then (i) the Plan, (ii) the rejection of executory contracts or unexpired leases pursuant to the Plan, (iii) any document or agreement executed pursuant to the Plan, (iv) any actions, releases, waivers, or injunctions authorized by this Confirmation Order or any order in aid of consummation of the Plan, and (v) this Confirmation Order shall be deemed null and void. In such event, nothing contained in this Confirmation Order, any order in aid of consummation of the Plan, or the Plan, and no acts taken in preparation for consummation of the Plan, (a) shall be deemed to constitute a waiver or release of any Claims or Equity Interests by or against the Debtors or any other persons or entities, to prejudice in any manner the rights of the Debtors or any person or entity in any further proceedings involving the Debtors or otherwise, or to constitute an admission of any sort by the Debtors or any other persons or entities as to any issue, or (b) shall be construed as a finding of fact or conclusion of law in respect thereof.

55.    Notice of Entry of Confirmation Order. On or before the tenth (10th) Business Day following the date of entry of this Confirmation Order, the Debtors shall serve notice of entry of this Confirmation Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on all creditors and interest holders, the United States Trustee, and other parties in interest, by causing notice of entry of this Confirmation Order (the "Notice of Confirmation"), to be delivered to such parties by first-class mail,

postage prepaid. The notice described herein is adequate under the particular circumstances and no other or further notice is necessary.

56.    <u>Notice of Effective Date</u>. Within five (5) Business Days following the occurrence of the Effective Date, the Debtors shall file notice of the occurrence of the Effective Date and shall serve a copy of same on those parties entitled to notice pursuant to the Court's order dated September 30, 2003. Such notice is good and sufficient notice of the Effective Date under the Bankruptcy Code and the Bankruptcy Rules. The Debtors shall be required to provide no other or further notice of the Effective Date.

57.    <u>Binding Effect</u>. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan, the Settlement Agreement (but only after its approval by the District Court) and the Liquidating Trust Agreement shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

58.    <u>Conflicts Between Order and Plan</u>. To the extent of any inconsistency between the provisions of the Plan or the Liquidating Trust Agreement and this Confirmation Order, the terms and conditions contained in the Plan or the Liquidating Trust Agreement, as the case may be, shall govern. The provisions of this Confirmation Order are integrated with each other and are nonseverable and mutually dependent unless expressly stated by further order of this Court.

59.    <u>Purchase Agreement with Genzyme Corporation</u>. Nothing contained in the Plan or in this Confirmation Order, or in any other order in the Chapter 11 Cases shall alter, conflict with, or derogate from, the provisions of the purchase

agreement with Genzyme Corporation or that certain order dated April 7, 2004 approving

the sale embodied in the purchase agreement with Genzyme Corporation.

      60.    <u>Incorporation by Reference</u>.  Findings of fact and conclusions of

law in the record of the Confirmation Hearing are fully incorporated by reference as if

fully set forth herein at length.

Dated: March 21 2005
      New York, New York

                      / S / PRUDENCE CARTER BEATTY

                      UNITED STATES BANKRUPTCY JUDGE